**2020 IL 125085**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125085)

MATTHEW GORAL *et al.*, Appellees, v. THOMAS J. DART *et al.*, Appellants.

*Opinion filed October 22, 2020.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride and Karmeier concurred in the judgment and opinion.

Justice Michael J. Burke dissented, with opinion, joined by Justices Garman and Theis.

**OPINION**

¶ 1        Defendant, Thomas J. Dart, Sheriff of Cook County (Sheriff), instituted employment disciplinary proceedings against plaintiffs, Matthew Goral, Kevin Badon, Michael Mendez, Milan Stojkovic, David Evans III, Frank Donis, and Lashon Shaffer, who were employed as officers for the Sheriff. The disciplinary

charges against plaintiffs were filed with the Cook County Sheriff's Merit Board (Merit Board) pursuant to section 3-7011 of the Counties Code (Code). 55 ILCS 5/3-7011 (West 2012). Plaintiffs filed motions with the Merit Board to dismiss the disciplinary charges against them. While the administrative proceedings were pending, plaintiffs filed an action in the circuit court of Cook County for declaratory, injunctive, and monetary relief against the Sheriff, Cook County, the Merit Board, and Toni Preckwinkle, president of the Cook County Board of Commissioners (collectively, defendants). In that lawsuit, plaintiffs asserted that the Merit Board was not legally constituted because several of its members had been appointed to and/or served terms that did not comply with the statutory requirements set forth in section 3-7002 of the Code. *Id.* § 3-7002. On defendants' motions, the circuit court of Cook County dismissed plaintiffs' action on the ground that they had failed to exhaust their administrative remedies. The appellate court reversed in part, holding *inter alia* that, since plaintiffs had challenged the authority of the Merit Board to address the charges, the "authority" exception to the exhaustion requirement applied. See 2019 IL App (1st) 181646, ¶ 39. We allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2018). For the reasons that follow, we affirm the judgment of the appellate court and remand to the circuit court for further proceedings.

¶ 2                                I. BACKGROUND

¶ 3        Plaintiffs are employees of the Cook County Sheriff whom the Sheriff charged with disciplinary infractions and placed on unpaid administrative leave pending decisions by the Merit Board. From the beginning of their disciplinary proceedings, plaintiffs have challenged the authority of the Merit Board to hear their cases on the ground that the Merit Board was illegally constituted.

¶ 4        On September 16, 2016, the Sheriff filed disciplinary complaints against plaintiffs Goral, Badon, Mendez, and Stojkovic, seeking to terminate their employment.

¶ 5        On September 23, 2016, the appellate court issued its first decision in *Taylor v. Dart*, 2016 IL App (1st) 143684, ¶¶ 7-8, which held that Taylor's termination as a Sheriff's employee was void because the Merit Board's composition was illegal on

the ground that a Merit Board member (Rosales) had been appointed on an interim basis in violation of section 3-7002 of the Code (55 ILCS 5/3-7002 (West 2012)).

¶ 6 The Sheriff appealed that decision, and on January 25, 2017, this court entered a supervisory order directing the appellate court to vacate its judgment and decide an issue it had declined to address regarding Cook County's home-rule authority. See *Taylor v. Dart*, No. 121507 (Ill. Jan. 25, 2017) (supervisory order).

¶ 7 On February 22, 2017, the Sheriff filed a disciplinary complaint against plaintiff Evans with the Merit Board seeking his termination.

¶ 8 On May 12, 2017, the appellate court issued its second decision in *Taylor v. Dart*, 2017 IL App (1st) 143684-B. The appellate court again held that the interim appointment of Rosales violated the Code and that the termination of Taylor's employment was void because the Merit Board lacked statutory authority to issue that decision. *Id.* ¶¶ 37, 46. The court also addressed the home-rule issue and held that it did not alter the result in its prior ruling. *Id.* ¶ 50.

¶ 9 On July 20, 2017, the Sheriff suspended plaintiff Shaffer without pay and filed a disciplinary complaint with the Merit Board seeking his termination.

¶ 10 During the preliminary stages of their administrative proceedings, all plaintiffs raised arguments challenging the Merit Board's statutory authority to hear their cases, based in part on the appellate court's decision in *Taylor*. These challenges were raised in motions to dismiss, which the Merit Board declined to address on the ground that such motions were not authorized in its administrative rules.

¶ 11 On November 27, 2017, plaintiffs filed a lawsuit for declaratory, injunctive, and monetary relief against the Sheriff. [1] The complaint challenged the legal composition of the Merit Board and, therefore, the Merit Board's statutory authority to address the disciplinary charges against plaintiffs.

¶ 12 After that lawsuit was filed and in response to *Taylor*, the legislature amended the Code provision governing Merit Board appointments. In particular, the amendment to section 3-7002 of the Code, which became effective December 8,

---

[1]The original complaint was filed by plaintiffs Goral, Badon, Mendez, and Stojkovic. On December 11, 2017, the first amended complaint was filed adding Evans and Shaffer as plaintiffs.

2017, made the following changes: (1) permitted the Sheriff to make interim appointments to the Merit Board; (2) abolished all existing terms of each member of the Merit Board; and (3) created a new schedule for staggered terms of Merit Board members. See Pub. Act 100-562, § 5 (eff. Dec. 8, 2017) (amending 55 ILCS 5/3-7002).

¶ 13     On December 13, 2017, the Sheriff appointed a new Merit Board. The composition of the new Merit Board included six of the seven members of the previous board but with varying terms.

¶ 14     On January 23, 2018, the Sheriff filed with the new Merit Board "amended" charges against each plaintiff. The amended charges simply restated the allegations that had been filed previously.

¶ 15     On February 26, 2018, plaintiffs filed a second amended complaint against defendants. That complaint, which is at issue in this appeal, challenged the legal composition of both the previous Merit Board and the new Merit Board appointed after December 8, 2017. The complaint's allegations relating to the previous Merit Board asserted that some members had been appointed to illegal interim terms; the Merit Board was composed of only five members, not the required seven members; some of the member's terms were not staggered as required by the Code; and the Merit Board's chairperson and secretary held their positions longer than permitted under the Code.

¶ 16     The complaint's allegations against the new Merit Board asserted that the prior board's lack of authority could not be "cured" by filing amended charges with a new Merit Board, the Merit Board's political composition violated the Code, the chairperson and secretary continued to hold their positions longer than permitted under the Code, the Merit Board created "fatal due process problems" by now requiring plaintiffs to pay the costs of disciplinary hearing transcripts, and the Merit Board is biased against the plaintiffs.

¶ 17     On July 26, 2018, the circuit court granted defendants' section 2-619(a)(1) (735 ILCS 5/2-619(a)(1) (West 2018)) motion to dismiss, ruling that plaintiffs were required to exhaust their administrative remedies before seeking relief outside the context of administrative review. The circuit court noted that the amended disciplinary charges against plaintiffs were still pending before the Merit Board.

The court determined that, since the administrative proceedings were ongoing and plaintiffs could exhaust their claims for relief before the Merit Board, the court lacked subject-matter jurisdiction. Plaintiffs appealed the circuit court's dismissal of their complaint.

¶ 18     While the appeal was pending, the Merit Board issued decisions on the charges against Shaffer and Evans. In an order dated December 14, 2018, the Merit Board found that Shaffer should be separated from the Cook County Sheriff's Office, effective July 25, 2017. The Merit Board found in favor of Evans and ordered that he be reinstated, effective February 22, 2017.

¶ 19     On June 26, 2019, the appellate court reversed the dismissal of plaintiffs' lawsuit. See 2019 IL App (1st) 181646, ¶¶ 114-15.[2] The court determined that plaintiffs' complaint alleged several defects in the Merit Board's composition, which would nullify the Merit Board's authority to adjudicate the administrative actions against plaintiffs. The court found that, as the allegations challenged the Merit Board's lawful composition and its authority to act, the complaint fell within the "authority" exception to the exhaustion doctrine. *Id.* ¶¶ 38-39.

¶ 20     The appellate court relied on the authority exception to conclude that the circuit court could hear plaintiffs' claims challenging the composition of the Merit Board. The court also determined that plaintiffs may proceed with their claims for back pay, which resulted from the proceedings before the illegally constituted Merit Board. *Id.* ¶¶ 52-53.

¶ 21     With regard to plaintiffs' due process claims, the appellate court held that the two claims that were premised on alleged bias of the Merit Board did not fall within the "futility" exception to the exhaustion requirement and, therefore, were properly dismissed for lack of subject-matter jurisdiction. *Id.* ¶¶ 62-70, 72-74. The court found that the plaintiffs' final due process claim, premised on the new imposition of a fee to obtain hearing transcripts, may or may not fall within the "futility" exception. The court ruled that plaintiffs must be given an opportunity to amend their complaint to assert "futility," if they can do so in good faith. Accordingly, that claim was not subject to dismissal. *Id.* ¶¶ 76-81.

---

[2]On the motion of defendants, the appellate court filed a corrected opinion on July 10, 2019, deleting all references to plaintiff Frank Donis as a party to the appeal.

¶ 22 The appellate court also addressed defendants' alternative argument that the "*de facto* officer" doctrine confers validity upon the Merit Board's actions and, thereby, precludes the circuit court from considering plaintiffs' claims. The court found that the *de facto* officer doctrine does not apply in this case because plaintiffs had consistently challenged the Merit Board's authority to adjudicate the disciplinary complaints against them since their cases began and they were not attempting to avoid the consequences of a concluded administrative action. *Id.* ¶¶ 96-112.

¶ 23 After the appellate court issued its opinion, the Merit Board adjudicated the charges against Goral, Baden, Mendez, and Stojkovic. In orders dated July 10, 2019, the Merit Board found that all four plaintiffs should be reinstated to the Cook County's Sheriff's Department, effective September 16, 2016.

¶ 24 In each plaintiff's case, the Merit Board found its members to be duly appointed under the December 2017 amendments to the Code. The Merit Board also found that it had authority to receive the Sheriff's complaints, as that was an administrative function handled by agency staff members and not by Merit Board members.

¶ 25 Defendants appeal the judgment of the appellate court. We granted the Illinois Attorney General and the City of Chicago leave to submit an *amici curiae* brief in support of defendants' position. Ill. S. Ct. R. 345 (eff. Sept. 10, 2010).

¶ 26                                                II. ANALYSIS

¶ 27 At issue is whether the circuit court erred in granting defendants' section 2-619(a)(1) motion to dismiss plaintiffs' complaint based on lack of subject-matter jurisdiction. 735 ILCS 5/2-619(a)(1) (West 2018). A motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the complaint but asserts another affirmative matter that defeats the claim. *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556, ¶ 13. Such a motion also admits as true all well-pleaded facts and all reasonable inferences that can be drawn from them. *Id.* Section 2-619(a)(1) authorizes the dismissal of a complaint where the court does not have jurisdiction of the subject matter of the action. 735 ILCS 5/2-619(a)(1) (West

- 6 -

2018). In appeals from dismissal under section 2-619, the standard of review is *de novo*. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009).

¶ 28        Before this court, defendants challenge the appellate court's holding that the circuit court had subject-matter jurisdiction to address plaintiffs' complaint. In particular, defendants contend that the appellate court erroneously applied the authority exception to excuse plaintiffs from exhausting their administrative remedies. Defendants further maintain that the Merit Board should receive appointment challenges and complete a disciplinary case prior to the circuit court acquiring jurisdiction. In the alternative, defendants contend that, even if the exhaustion of remedies requirement does not apply, the *de facto* officer doctrine precludes the circuit court from addressing plaintiffs' claims.

¶ 29        In response, plaintiffs urge that the appellate court's judgment be affirmed, asserting that the authority exception to the exhaustion requirement was correctly applied and, thus, the circuit court had jurisdiction to hear their challenge to the composition of the Merit Board. Plaintiffs contend that the application of the authority exception was justified because their challenges called into question the authority of the Merit Board to conduct any proceedings against them. Plaintiffs further contend that the *de facto* officer doctrine does not preclude their claims for relief in the circuit court.

¶ 30                                A. Statutory Overview

¶ 31        Article VIII of the Merit Board's rules and regulations provides that the Sheriff, without filing charges with the Merit Board, may suspend a Sheriff's officer for any reasonable amount of time not to exceed 30 days. If the Sheriff seeks to terminate, demote or suspend an officer for a period of time in excess of 30 days, he must file a charge against such an officer with the Merit Board.

¶ 32        The Merit Board has exclusive authority to remove, demote, or suspend in excess of 30 days or terminate rank-and-file Sheriff's officers as a disciplinary sanction for violation of the Sheriff's rules, regulations, and code of conduct. 55 ILCS 5/3-7011, 3-7012 (West 2012).

¶ 33    Because an administrative agency is a creature of statute, it has no general or common-law powers. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2015 IL 117443, ¶ 16 (citing *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 553 (2005)); *Landfill, Inc. v. Pollution Control Board*, 74 Ill. 2d 541, 554 (1978). An administrative agency's powers are limited to those granted by the legislature, and any action taken by an agency must be authorized by its enabling act. *Ferris, Thompson & Zweig, Ltd.*, 2015 IL 117443, ¶ 16; *Alvarado*, 216 Ill. 2d at 553; *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 112-13 (1976).

¶ 34    The Illinois Constitution provides that circuit courts have jurisdiction to review administrative decisions as provided by law. Ill. Const. 1970, art. VI, § 9. The Administrative Review Law "shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of *** the Administrative Review Act." 735 ILCS 5/3-102 (West 2018). Where it is adopted, the Administrative Review Law bars any other statutory, equitable, or common-law mode of review of decisions of administrative agencies. *Id.*; *Illinois Bell Telephone Co. v. Allphin*, 60 Ill. 2d 350, 355 (1975). The Code provides that the Administrative Review Law applies to and governs proceedings for review of the Merit Board. 55 ILCS 5/3-7012 (West 2012).

¶ 35                          B. The Doctrine of Exhaustion of
                               Administrative Remedies

¶ 36                               1. General Principles

¶ 37    The exhaustion doctrine is well established in administrative case law. *McKart v. United States*, 395 U.S. 185, 193 (1969); *Allphin*, 60 Ill. 2d at 357-58. The common-law doctrine provides that a party aggrieved by an administrative decision ordinarily cannot seek judicial review without first pursuing all available administrative remedies. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308 (1989). An administrative decision "means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101 (West 2018). In

Illinois, the common-law doctrine of exhaustion is incorporated in the Administrative Review Law. *Castaneda*, 132 Ill. 2d at 320-21.

¶ 38 Exhaustion of administrative remedies serves two main purposes. First, exhaustion gives the agency an opportunity to correct its own mistakes with respect to the programs it administers. Second, exhaustion promotes efficiency, in that claims generally can be resolved much more quickly and economically in proceedings before an agency. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *Beahringer v. Page*, 204 Ill. 2d 363, 375 (2003).

¶ 39 This court has further recognized that requiring the exhaustion of remedies (1) allows the administrative agency to fully develop and consider the facts of the cause before it, (2) allows the agency to utilize its expertise, and (3) allows the aggrieved party to ultimately succeed before the agency, rendering judicial review unnecessary. *Castaneda*, 132 Ill. 2d at 308; see also *Allphin*, 60 Ill. 2d at 358. The doctrine also helps protect agency processes from impairment by avoidable interruptions, allows the agency to correct errors, and conserves valuable judicial time by avoiding piecemeal appeals. *Castaneda*, 132 Ill. 2d at 308.

¶ 40 As noted above, where the Administrative Review Law is applicable and provides a remedy, a circuit court may not redress a party's grievance through any other type of action. Ill. Const. 1970, art. VI, § 9; *Dubin v. Personnel Board of the City of Chicago*, 128 Ill. 2d 490, 498 (1989). The court's power to resolve factual and legal issues arising from an agency's decision must be exercised within its review of the agency's decision and not in a separate proceeding. *Dubin*, 128 Ill. 2d at 498-99. Thus, administrative remedies must be exhausted before equitable relief is sought from the courts. *Id.*

¶ 41 Although the exhaustion doctrine is firmly established and strict compliance with the doctrine is generally required, there are several exceptions that are also equally well established. *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 552 (1999); see also *Castaneda*, 132 Ill. 2d at 309. Two such exceptions are " 'where no issues of fact are presented, or agency experience is not involved *** or where the agency's jurisdiction is attacked because it is not authorized by statute.' " *County of Knox*, 188 Ill. 2d at 552 (quoting *Castaneda*, 132 Ill. 2d at 309); see also *Board of Governors of State Colleges & Universities*

*for Chicago State University v. Illinois Fair Employment Practices Comm'n*, 78 Ill. 2d 143, 147-48 (1979); *Landfill, Inc.*, 74 Ill. 2d at 551.

> " ' "The term 'jurisdiction,' while not strictly applicable to an administrative body, may be employed to designate the authority of the administrative body to act ***." [Citation.] Thus, in administrative law, the term "jurisdiction" has three aspects: (1) personal jurisdiction—the agency's authority over the parties and intervenors involved in the proceedings, (2) subject matter jurisdiction—the agency's power "to hear and determine cases of the general class of cases to which the particular case belongs" [citation], and (3) an agency's scope of authority under the statutes.' " *County of Knox*, 188 Ill. 2d at 553 (quoting *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989)).

¶ 42 This court has explained that, where an agency's statutory authority to exercise jurisdiction is at issue, no questions of fact are involved, and the agency's expertise is not implicated in statutory interpretation. *Board of Governors*, 78 Ill. 2d at 147-48; see also *Landfill, Inc.*, 74 Ill. 2d at 550-51. Further, where the authority of an administrative body is in question, the determination of the scope of its power and authority is a judicial function, not a question to be finally determined by the administrative agency itself. *County of Knox*, 188 Ill. 2d at 554. In addition, this court has recognized that there is virtually no chance that the aggrieved party will succeed before an agency where the issue is the agency's own assertion of authority. *Board of Governors*, 78 Ill. 2d at 148; *Landfill, Inc.*, 74 Ill. 2d at 550-51.

¶ 43                    2. The Exhaustion Doctrine Does Not Apply

¶ 44 In challenging the appellate court's decision, defendants assert that the Merit Board should retain jurisdiction to decide any challenges to its composition and complete a disciplinary case prior to review in the circuit court. Defendants further contend that an administrative agency is in a superior position to address appointment deficiency challenges that are raised in the agency before a final decision is reached. In essence, defendants argue that plaintiffs must fully litigate the disciplinary charges and exhaust their administrative remedies before the Merit Board, which they have alleged lacks statutory authority to adjudicate those charges. We disagree.

- 10 -

¶ 45 Here, plaintiffs alleged in their complaint that the preamendment Merit Board was composed of illegal interim appointees and appointees to nonstaggered terms; that after two members resigned, the Merit Board was composed of only five members, as opposed to the statutorily required seven members; and that the chairman and secretary of the Merit Board had violated their mandatory term limits. Plaintiffs further alleged that the postamendment Merit Board failed to meet the Code's political affiliation requirements. Thus, plaintiffs have asserted compositional defects with the Merit Board prior to the December 8, 2017, amendments to the Code as well as after those amendments went into effect.

¶ 46 Further, plaintiffs raised their objections to the Merit Board's authority to adjudicate their cases shortly after the charges were filed, but the Merit Board declined to rule on them until after the disciplinary proceedings were complete. In responding to plaintiffs' motions to dismiss, the Merit Board determined that, because its rules and regulations did not provide for such motions, it could neither grant nor deny plaintiffs' requests for dismissal. Thus, the Merit Board took no action and rendered no decision regarding plaintiffs' claims prior to the filing of plaintiffs' lawsuit in the circuit court in November 2017.

¶ 47 As noted above, determining the scope of any agency's power and authority is a judicial function rather than a question for the agency to answer itself. *County of Knox*, 188 Ill. 2d at 554; *Gallaher v. Hasbrouk*, 2013 IL App (1st) 122969, ¶ 19. In their claims for declaratory, injunctive, and monetary relief, plaintiffs challenged the Merit Board's composition and, thus, its jurisdiction to conduct proceedings against them. Because plaintiffs' allegations fell within the authority exception, the exhaustion doctrine did not bar them from pursuing their claims in the circuit court. See *County of Knox*, 188 Ill. 2d at 552; *Castaneda*, 132 Ill. 2d at 309; see also *Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n*, 200 Ill. App. 3d 151, 157 (1990) (holding that, where the remedy of administrative and judicial review would come only after a hearing that the agency has no jurisdiction to conduct, it can be said that, as a matter of law, plaintiffs have no other remedy at law (citing *People ex. rel. Olin Corp. v. Department of Labor*, 95 Ill. App. 3d 1108, 1112 (1981))). We conclude that the exhaustion of remedies doctrine does not preclude a challenge to the statutory jurisdiction of the Merit Board. See *County of Knox*, 188 Ill. 2d at 555; see also *Castaneda*, 132 Ill. 2d at 309; *Business &*

*Professional People for the Public Interest*, 136 Ill. 2d at 245 (finding, to the extent an agency acts without statutory authority, it acts outside its jurisdiction).

¶ 48    In seeking to avoid this result, defendants contend that the appellate court erroneously excused the exhaustion requirement by applying the authority exception to plaintiffs' complaints. Defendants argue that this court has narrowly limited the authority exception to situations where an agency exceeds its authority by promulgating a rule or regulation that falls outside the statutory subject matter assigned to the agency's jurisdiction by the legislature. Defendants maintain that the authority exception has never been applied to procedural appointment challenges, which are unrelated to the scope of the Merit Board's statutory rulemaking power and unrelated to the Merit Board's subject-matter jurisdiction.

¶ 49    Defendants further argue that the appellate court erred in relying on *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173 (2003), and *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160 (2002), in applying the authority exception to plaintiffs' procedural appointment challenges because those two cases did not involve the exhaustion doctrine. Although we agree that *Vuagniaux* and *Daniels* have no bearing on the exhaustion doctrine *per se*, we reject defendants' argument that the authority exception cannot be applied under the circumstances presented here.

¶ 50    In asserting that the authority exception applies only to improper rulemaking, defendants rely on *Crittenden v. Cook County Comm'n on Human Rights*, 2013 IL 114876, ¶ 34, in which this court held that the Cook County Commission on Human Rights lacked authority to award punitive damages because its enabling legislation did not provide the commission with the express authority to award punitive damages. Defendants also rely on *County of Knox*, 188 Ill. 2d at 555, which similarly concluded that a zoning board did not have authority to regulate the agricultural land at issue because its empowering statute did not allow it to do so. Defendants further rely on *City of Chicago*, 65 Ill. 2d at 115, in which this court held that, absent statutory authorization, the commission exceeded its jurisdiction in awarding attorney fees. None of the decisions cited by defendants were premised on the administrative agencies' promulgation of a rule or regulation that fell outside its subject-matter jurisdiction. Rather, they rested on a lack of authority as defined by each administrative tribunal's enabling statute. Thus, the precedent on which

defendants rely does not support their contention that the exhaustion doctrine's authority exception is restricted to improper rulemaking by an agency.

¶ 51    Plaintiffs' allegations that the Merit Board was not lawfully constituted call into question the Merit Board's authority to act and to proceed against them. Indeed, plaintiffs have challenged the Merit Board's inherent power and authority to adjudicate where, if as alleged, any order in the proceedings would be void. See *Business & Professional People for the Public Interest*, 136 Ill. 2d at 243-44 (finding that a decision by an agency that lacks jurisdiction or lacks the inherent power to make or enter the particular order involved is void and may be attacked at any time or in any court, either directly or collaterally). Consequently, we find that, under the circumstances here, where plaintiffs have challenged the Merit Board's composition and its authority to act, the authority exception to the exhaustion requirement applies. *Board of Governors*, 78 Ill. 2d at 147; see also *Landfill, Inc.*, 74 Ill. 2d at 550 (reasoning that the purposes for the exhaustion requirement are not served where an administrative assertion of authority to hear or determine certain matters is attacked on the grounds that the assertion of jurisdiction is not authorized by statute).[3]

¶ 52                     3. The Merit Board's Expertise Is Not Implicated

¶ 53    In support of their contention that the appellate court erroneously excused plaintiffs from satisfying the exhaustion requirement, defendants posit that plaintiffs' disputes before the Merit Board are primarily factual or specialized legal matters that call upon the Merit Board's expertise. Defendants maintain that the exhaustion of remedies requirement allows the agency to utilize its expertise, while fully developing the record, to consider the facts at issue. Defendants assert that the members of the Merit Board are either lawyers with experience in law enforcement or government practices or are nonlawyers with law enforcement, local government, or community organizing experience. Defendants contend that the Merit Board routinely brings this expertise to bear, including its familiarity with rules and regulations, in cases before it and should be allowed to employ that

---

[3]Defendants also have argued that the futility exception to the exhaustion doctrine does not apply. In light of our determination that the authority exception applies to plaintiffs' challenges, we need not address this argument.

expertise regarding plaintiffs' challenges to the Merit Board's composition. This argument is without merit.

¶ 54    Based on the comprehensive statutory scheme governing the Merit Board, we observe that the legislature has deemed the Merit Board to be the proper entity in making factual findings and decisions regarding disciplinary complaints against Sheriff's officers. See 55 ILCS 5/3-7001 (West 2012). In addition, the legislature has provided that the Merit Board should employ its expertise in the appointment, promotion, and disciplinary proceedings regarding the Sheriff's officers. *Id.* § 3-7006 (stating the Merit Board shall establish a classification of ranks of the deputy sheriffs in the county police department); *id.* § 3-7008 (defining requirements for certification of applicants for sworn Sheriff's positions); *id.* § 3-7009 (defining requirements for certification of promotions to sergeant and lieutenant); *id.* § 3-7012 (providing for written charges to be filed by the Sheriff against sworn officers, triggering a hearing before the Merit Board, and establishing its powers regarding such hearings).

¶ 55    However, the Merit Board is not vested with the authority to make its own appointments. See *id.* § 3-7002 (providing that the Sheriff appoints Merit Board members, with confirmation by the Cook County Board). There is nothing in the statutory language to suggest that the legislature intended for the Merit Board to make decisions regarding its own members' appointments or its composition. Consequently, we conclude that it would be unreasonable to find that these provisions direct the Merit Board to address such challenges. See *Board of Governors*, 78 Ill. 2d at 148; see also *Landfill, Inc.*, 74 Ill. 2d at 551 (finding that, where an agency's statutory authority to exercise jurisdiction is at issue, such a determination involves no questions of fact and the agency's particular expertise is not implicated).

¶ 56                        4. The Alleged Potential for Chaos
                              at the Administrative Level

¶ 57    Defendants next contend that allowing widespread exceptions to the exhaustion doctrine would thwart the legislative intent of consigning certain disputes to agency specialists and would create "unworkable chaos" at the Merit Board. Defendants maintain that the decision by the appellate court imposes fact-finding burdens on

the circuit courts that "fly in the face" of legislation about the role of courts in reviewing agency actions. According to defendants, the result reached by the appellate court would subject administrative agencies throughout Illinois to a wave of declaratory or injunctive lawsuits based on interlocutory procedural challenges to individual agency hearing officers. Defendants further contend that allowing plaintiffs to "skip over" administrative processes by filing claims in the circuit court is the opposite of judicial economy and efficiency. We do not agree.

¶ 58        Initially, we note that plaintiffs did not "skip over" the Merit Board but, rather, raised the issue before the Merit Board, which refused to hear them until after the disciplinary proceedings were complete. Further, there is no indication that there is a plethora of challenges to the statutory authority of other agencies because of appointment defects. Moreover, Illinois Rule of Professional Conduct 3.1 (eff. Jan. 1, 2010) prohibits the filing of frivolous lawsuits. Specifically, Rule 3.1 provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law." *Id.* We are confident that the bar will adhere to that proscription. Thus, there are adequate safeguards in place to protect against the chaos that defendants allege.

¶ 59                        5. The Alleged Risk of Piecemeal
                              and Simultaneous Litigation

¶ 60        We next consider defendants' contention that the exhaustion doctrine applies without exception to plaintiffs' challenges since the doctrine conserves valuable judicial time by avoiding piecemeal appeals. Defendants further contend that this court has never allowed simultaneous litigation in the court and at the agency— appointment challenges in the circuit court and disciplinary charges before the Merit Board. Defendants assert that the exhaustion doctrine cautions against disrupting and paralyzing an agency with a premature lawsuit in the circuit court before the agency has decided a disputed case.

¶ 61        In support, defendants cite several decisions that forbid simultaneous litigation in the agency and the circuit court. See *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212-13 (2008) (requiring all issues to be

resolved in an agency before they can be raised in circuit courts serves the purpose of the orderly procedure and justice in forbidding new arguments on administrative review); *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278-79 (1998) (administrative review is confined to the proof before the agency and serves the purpose of avoiding piecemeal litigation); *Dubin*, 128 Ill. 2d at 498 (holding that the Administrative Review Law bars other types of actions against an agency). This argument lacks merit.

¶ 62    The cases cited by defendants are inapplicable because they deal with challenges to final administrative decisions made by an agency and the sufficiency of the agency's findings of fact. The present action was brought as a declaratory and injunctive action, and the issue is not whether an order was correct but whether the agency had the authority to enter any order at all.

¶ 63    In our view, the height of inefficiency and waste is to allow the proceedings to continue before an administrative tribunal that is being challenged as illegally comprised. Defendants fail to acknowledge that requiring the proceedings to continue at the administrative level through hearings and decisions before an allegedly illegally comprised Merit Board runs counter to judicial economy. If the Merit Board is improperly constituted, a full administrative proceeding is an expensive and time-consuming exercise in futility, where the circuit court would have to undo all those proceedings because the Merit Board lacked the inherent power to make or enter the order. In fact, if, as alleged, the Merit Board is illegally comprised, any decision would be void. *Business & Professional People for the Public Interest*, 136 Ill. 2d at 243-44; *Newkirk v. Bigard*, 109 Ill. 2d 28, 36 (1985); *City of Chicago*, 65 Ill. 2d at 113 (finding that absent statutory authorization the agency exceeded its jurisdiction with a void order). It is both logical and more efficient to adjudicate plaintiffs' composition challenges first and then proceed with the disciplinary charges before a legally comprised Merit Board.

¶ 64                        6. The Circuit Court Can Decide
                          Plaintiffs' Claims for Back Pay

¶ 65    Lastly, defendants argue that questions regarding plaintiffs' back pay is a disputed question of fact that the Merit Board is best suited to address. Defendants

contend that the circuit court should be limited to affirming or reversing the back pay award, if and when made, on administrative review.

¶ 66    Defendants rely on *Mitchem v. Cook County Sheriff's Merit Board*, 196 Ill. App. 3d 528 (1990), for the proposition that the Administrative Review Law does not provide the circuit court with the power to award back pay. In *Mitchem*, petitioner was found to have been unlawfully suspended in excess of the statutory time limit. *Id.* at 533. On appeal, the appellate court reasoned that the circuit court was limited in its power by the Administrative Review Law and could only affirm or reverse the order of suspension with or without remand. *Id.* The appellate court found the circuit court had exceeded its powers by awarding back pay. *Id.* at 534. The court was limited to the record before it, and the award of back pay and benefits required the taking of additional evidence. *Id.*

¶ 67    Defendants contend that the *Mitchem* decision best serves the legislature's intent to put the discovery and fact-finding process with the Merit Board. In support, defendants point out that other jurisdictions that have considered the issue agree with *Mitchem*, that the issue of back pay is a question for the trier of fact. See *Senior Accountants Analysts & Appraisers Ass'n v. Detroit*, 249 N.W.2d 121, 125 (Mich. 1976) (holding that calculation of back pay is a question of fact); *Pegues v. Mississippi State Employment Service*, 899 F.2d 1449, 1455 (5th Cir. 1990) (determining that back pay owed for employment discrimination is a question of fact); *Meacham v. Knolls Atomic Power Laboratory*, 185 F. Supp. 2d 193, 236 (N.D.N.Y. 2002) (same).

¶ 68    In the case at bar, we agree with the appellate court's determination that plaintiffs' claims for back pay were not subject to the exhaustion requirement because the predominate questions were legal questions involving the Merit Board's statutory authority to act. 2019 IL App (1st) 181646, ¶¶ 52-53. As noted, such claims need not be raised before the agency and would be subject to *de novo* review. *County of Knox*, 188 Ill. 2d at 554 (recognizing that the scope of an agency's authority is a judicial determination). In addition, none of the statutory provisions defining the scope of the Merit Board's authority vest its particular expertise in determining issues such as back pay, mitigation, and setoffs. Moreover, this court has previously remanded a similar case to the circuit court for computation of back pay owed to an employee who was improperly terminated.

*Thaxton v. Walton*, 106 Ill. 2d 513, 520 (1985). Consequently, plaintiffs are permitted to pursue their claims for back pay in the circuit court.

¶ 69                                  C. The *De Facto* Officer Doctrine

¶ 70        Defendants have asserted the *de facto* officer doctrine as an alternative and independent ground for affirming the dismissal of plaintiffs' complaint. Specifically, defendants contest the appellate court's determination that the *de facto* officer doctrine protects the integrity of final agency decisions handed down before a court has declared a board's composition illegal. In addition, defendants argue that the appellate court erred in holding that the "first challenger" exception to the doctrine permitted plaintiffs to challenge the composition of the Merit Board under the amended statute. According to defendants, the *de facto* officer doctrine validates all actions of a public officer, regardless of any deficiency in the officeholder's title and regardless of whether those actions are recent or old. We disagree.

¶ 71        The *de facto* officer doctrine is a common-law equitable doctrine that confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment to office is deficient. *Ryder v. United States*, 515 U.S. 177, 180 (1995); *Vuagniaux*, 208 Ill. 2d at 186-87. Under the doctrine, the acts of a person actually performing the duties of an office under color of title are valid so far as the public or third parties who have an interest in them are concerned. *People ex rel. Chillicothe Township v. Board of Review*, 19 Ill. 2d 424, 426 (1960). The doctrine originated as a means to avoid the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question. *Ryder*, 515 U.S. at 180. It, therefore, serves to protect the public by ensuring the orderly functioning of the government despite the existence of technical defects in title to office. *Id.*

¶ 72        Significantly, the *de facto* officer doctrine is applied as a defense to an attack on the acts of an officer or appointee in a collateral proceeding. *Daniels*, 201 Ill. 2d at 166 (citing *People ex rel. Rusch v. Wortman*, 334 Ill. 298, 301-02 (1928)). The initiation of a collateral proceeding necessarily requires a prior act or judgment that is, or may be, subject to attack. See generally Black's Law Dictionary 329 (11th ed.

2019) (defining "collateral attack" as "[a]n attack on a judgment in a proceeding other than a direct appeal"). Thus, the legal concept of a collateral attack presumes that some official act or decision has occurred.

¶ 73     The *de facto* officer doctrine is not intended to preclude a timely challenge to agency authority, and this court has recognized that a direct attack in the same proceeding in which a board member is appointed is permissible. See *Vuagniaux*, 208 Ill. 2d at 187. Thus, our precedent embraces the notion that, before being subjected to an administrative proceeding, a party should have some avenue to timely question and verify that the agency has authority to act.

¶ 74     Permitting such a challenge does not thwart the *de facto* officer doctrine, which serves to preserve the integrity of an official action that is complete and where the authority of the agency or public officer was not challenged in a timely manner. See *Ryder*, 515 U.S. at 180 (observing that the doctrine protects official actions "even though it is *later* discovered that the legality of that person's appointment or election to office is deficient" (emphasis added)); see also *id.* at 182-83 (reasoning that one who makes a timely challenge to the constitutionality of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of that question and whatever relief may be appropriate); *Equal Employment Opportunity Comm'n v. Sears, Roebuck & Co.*, 650 F.2d 14, 17 (2d Cir. 1981) (noting that the doctrine was developed to preserve the integrity of official actions that "could *later* be invalidated by exposing defects in the officials' titles" (emphasis added)).

¶ 75     Timing matters. Here, given that the Merit Board had not taken any substantive action regarding plaintiffs' disciplinary charges prior to the filing of their lawsuit in circuit court, we conclude that the *de facto* officer doctrine does not apply. Plaintiffs were not trying to unwind or undermine any administrative determination by the Merit Board. At the time plaintiffs filed both their original and second amended complaints, there had been no action or judgment by the Merit Board in plaintiffs' proceedings to which the doctrine could confer validity.[4] Because the *de facto* officer doctrine has not been—and should not be—employed as an

_____

[4]The ministerial task of accepting the disciplinary charges against plaintiffs was not an "action" by the Merit Board. The decision to file disciplinary charges is reserved to the Sheriff alone, and neither section 3-7012 nor the Merit Board's rules and regulations provide that the Board can reject written charges. Plaintiffs' lawsuit questioned whether the Board could address those charges by conducting discovery, preliminary hearings, hearings on the merits, and issuing decisions.

obstacle to preclude a timely challenge to the authority of an administrative agency, it does not justify the dismissal of plaintiffs' complaint.

¶ 76 In light of our conclusion that the *de facto* officer doctrine has no bearing on this case, we need not address defendants' argument that the appellate court erred in holding that the "first challenger" principle operates as an exception to the doctrine and is applicable to plaintiffs' claims. Courts of review will not decide moot or abstract questions, will not review cases merely to establish precedent, and will not render advisory opinions. *Peach v. McGovern*, 2019 IL 123156, ¶ 64 (citing *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, ¶ 41). In addition, reviewing courts ordinarily will not consider issues that are not critical to the disposition of the case presented or where the result will not be affected regardless of how the issues are decided. *Id.* (citing *Condon v. American Telephone & Telegraph Co.*, 136 Ill. 2d 95, 99 (1990)). Accordingly, we leave the applicability of the "first challenger" principle for another day.

¶ 77                      D. Plaintiffs Were Not Required to
                            Bring a *Quo Warranto* Action

¶ 78 Finally, we address the contention of defendants and the *amici* supporting their position that *quo warranto* exists as the exclusive means to challenge the credentials of a public officer and resolve defects in an official's appointment or election. According to defendants and the *amici*, the legislature has provided that *quo warranto* actions should be brought by either the attorney general or the state's attorney as the sole means of protecting the collective rights of the citizenry of the State of Illinois. See 735 ILCS 5/18-102 (West 2018).

¶ 79 Historically, *quo warranto* was employed to question the right of a person who is charged with usurping, intruding into, or unlawfully holding or executing any office and to effectuate the ouster of an illegally appointed officer. *People ex rel. Chillicothe Township*, 19 Ill. 2d at 427; *People ex rel. Farrington v. Whitcomb*, 55 Ill. 172, 176 (1870). Furthermore, when a court finds a person guilty in a *quo warranto* proceeding, the court may enter a judgment of ouster to effectuate that person's removal from the office. 735 ILCS 5/18-108 (West 2018); *People ex rel. Rahn v. Vohra*, 2017 IL App (2d) 160953, ¶ 35; (citing *People ex rel. Courtney v. Botts*, 376 Ill. 476, 480-81 (1941)). The Illinois *quo warranto* statute

codifies the common law and provides that such a proceeding may be initiated by private parties only under special circumstances. *People ex rel. Graf v. Village of Lake Bluff*, 206 Ill. 2d 541, 547 (2003) (citing 735 ILCS 5/18-102 (West 2000)). Thus, the traditional common-law writ of *quo warranto* and the modern statutory scheme both demonstrate that the purpose of bringing such an action is to correct an improper appointment or election and to achieve the ouster of a person who is illegally occupying a public office.

¶ 80 In this case, plaintiffs did not seek to oust the allegedly improperly appointed members of the Merit Board but, rather, to have the proceedings against them conducted and adjudicated by a legally constituted Merit Board. Further, plaintiffs have challenged the qualifications of *all* of the members of the Merit Board established under the preamendment statute as well as the members of the "newly appointed" Merit Board under the December 8, 2017, amended statute. As a consequence, requiring plaintiffs to pursue their claims in *quo warranto* proceedings would lead to a multiplicity of litigation involving each Merit Board member who is alleged to occupy his or her office in violation of the Code. Obviously, that is neither a simple solution, as *amici* contend, nor is it a judicially efficient or economical means of resolving plaintiffs' claims.

¶ 81 Moreover, a private litigant may bring a *quo warranto* action only with leave of court after the attorney general and the state's attorney have declined to do so. 735 ILCS 5/18-102 (West 2018). The decision to grant or deny a petition for leave to file a *quo warranto* action falls within the discretion of the circuit court. *Village of Lake Bluff*, 206 Ill. 2d at 547. Therefore, if both the attorney general and the state's attorney refuse to file a *quo warranto* action and the circuit court denies plaintiffs leave to do so, they would have no avenue whatsoever to present their challenges to the Merit Board's authority. Based on the aforementioned considerations, we conclude that bringing an action for *quo warranto* is not the most effective legal action for advancing plaintiffs' challenges. See *Andrade v. Lauer*, 729 F.2d 1475, 1488 (D.C. Cir. 1984) (observing that *quo warranto* can be a cumbersome procedure that could easily deprive a plaintiff with an otherwise legitimate claim of the opportunity to have his case heard). Accordingly, plaintiffs were not prohibited from pursuing their claims for relief in circuit court without filing a *quo warranto* action. *Id.* at 1499 (determining that individuals must have a

legal process available to redress specific legitimate claims).

¶ 82                                      III. CONCLUSION

¶ 83        In sum, we hold as follows. Plaintiffs were excused from exhausting their administrative remedies because their claims fell within the authority exception to the exhaustion doctrine. Accordingly, the circuit court erred in dismissing plaintiffs' complaint. In addition, the circuit court can adjudicate plaintiffs' requests for back pay and other claims because they do not fall within the particular expertise of the Merit Board. We further hold that the doctrines of *de facto* officer and *quo warranto* are inapplicable to plaintiffs' challenges. Consequently, we affirm the judgment of the appellate court and remand to the circuit court for further proceedings on all pending claims that have not been rendered moot.

¶ 84        Appellate court judgment affirmed.

¶ 85        Circuit court judgment reversed.

¶ 86        Cause remanded.

¶ 87        JUSTICE MICHAEL J. BURKE, dissenting:

¶ 88        At almost any point in this court's history, this court would have summarily disposed of the type of appointment challenges that plaintiffs bring here by applying the *de facto* officer doctrine. This court applied that doctrine faithfully and consistently until it issued its fractured decision in *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160 (2002). That decision, along with the denial of rehearing in *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187 (2002), and the decision in *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173 (2003), created confusion over how this court viewed the *de facto* officer doctrine. The decision under review today is another in a line of cases where the appellate court struggled to discern a coherent rule from this court's jurisprudence. Unfortunately, a majority of this court has issued a decision that further adds to that confusion and repeats many of the same errors that were made in *Daniels* and *Vuagniaux*. The Illinois Attorney General and the City of Chicago have filed a brief as *amici curiae* arguing that this

court should return to the traditional understanding of the *de facto* officer doctrine. I agree with that position, and I therefore cannot join the majority opinion.

¶ 89 Defendants raise two issues on appeal. First, the plaintiffs should have been required to exhaust their administrative remedies before filing an action in the circuit court challenging the Merit Board's composition. Second, even if there were deficiencies in the appointment process, the *de facto* officer doctrine validates the official actions of the Merit Board. Because I believe that plaintiffs cannot challenge the appointments to the Merit Board in *any* collateral proceeding—either before the Merit Board itself or in the circuit court—I am not going to dwell on the exhaustion issue. However, I will briefly address the majority's analysis of that issue, as it contains some misstatements of law that are ultimately relevant to the *de facto* officer question.

¶ 90                               EXHAUSTION OF REMEDIES

¶ 91 The majority correctly notes that "a party aggrieved by an administrative decision ordinarily cannot seek judicial review without first pursuing all available administrative remedies." *Supra* ¶ 37. The majority holds, however, that plaintiffs were not required to exhaust their administrative remedies because their complaint fell within the "authority exception" to the exhaustion of remedies doctrine. The majority cites *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546 (1999), for the proposition that this exception applies " ' "where the agency's jurisdiction is attacked because it is not authorized by statute." ' " *Supra* ¶ 41 (quoting *County of Knox*, 188 Ill. 2d at 552, quoting *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 309 (1989)). The majority then explains:

> " ' " 'The term "jurisdiction," while not strictly applicable to an administrative body, may be employed to designate the authority of the administrative body to act ***.' [Citation.] Thus, in administrative law, the term 'jurisdiction' has three aspects: (1) personal jurisdiction—the agency's authority over the parties and intervenors involved in the proceedings, (2) subject matter jurisdiction—the agency's power 'to hear and determine cases of the general class of cases to which the particular case belongs' [citation], and (3) an agency's scope of authority under the statutes." ' *County of Knox*, 188 Ill. 2d at 553 (quoting *Business & Professional People for the*

*Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989)).”
*Supra* ¶ 41.

¶ 92    As the above quote demonstrates, the authority exception applies only when the agency acts without jurisdiction. Clearly, then, under the majority's own test, the plaintiffs' complaint fails to satisfy the authority exception. First, there is no allegation the Merit Board lacked personal jurisdiction over the parties. Second, plaintiffs have not alleged that the Merit Board does not have the power or authority to hear this class of cases. And, finally, the complaint does not allege that the Merit Board exceeded its scope of authority under the statutes. The Merit Board sought to do nothing other than adjudicate disciplinary charges against these officers.

¶ 93    The majority appears to believe that the complaint falls within the third category, *i.e.*, that the Merit Board exceeded its statutory authority. But, as the majority notes, the test is whether the agency exceeded the *scope of its authority* under the statutes. The complaint simply does not allege this. Rather, it alleges defects in the composition of the board. The majority rejects defendants' argument that this prong of the authority exception applies only to improper rulemaking. The majority notes that the cases relied on by defendants—*Crittenden v. Cook County Comm'n on Human Rights*, 2013 IL 114876, *County of Knox*, 188 Ill. 2d 546, and *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108 (1976)— were not “premised on the administrative agencies' promulgation of a rule or regulation that fell outside its subject matter jurisdiction.” *Supra* ¶ 50. Be that as it may, all three cases involved an allegation that an agency acted beyond *the scope of* its statutory authority. *Crittenden* involved the Cook County Commission on Human Rights attempting to award punitive damages when its enabling legislation did not provide it with that authority. *Crittenden*, 2013 IL 114876, ¶¶ 17, 24. *County of Knox* involved an allegation that a zoning board was attempting to regulate certain agricultural land when its empowering statute did not allow it to do so. *County of Knox*, 188 Ill. 2d at 554-55. Finally, *City of Chicago* involved the Fair Employment Practices Commission awarding attorney fees when it did not have statutory authorization to do so. *City of Chicago*, 65 Ill. 2d at 112-13. Thus, each of these cases involved an allegation that an agency was attempting to act beyond the scope of its statutory authority. That is not the case here, where the Merit Board simply sought to adjudicate a disciplinary action against officers of the Cook County Sheriff. Nothing could be more squarely within the scope of its authority.

¶ 94       As the majority concedes, plaintiffs' complaint challenged the composition of the Merit Board. *Supra* ¶¶ 15, 45. The majority simply asserts that such an allegation falls within the authority exception without explaining how this is so. For instance, the majority states that "plaintiffs challenged the Merit Board's composition *and, thus, its jurisdiction* to conduct proceedings against them." (Emphasis added.) *Supra* ¶ 47. But a mere five paragraphs earlier the majority set forth the three ways that an agency can lack jurisdiction, not one of which is that an appointment is defective. *Supra* ¶ 42. In support of its contention that plaintiffs' allegations fell within the authority exception, the majority cites four cases, none of which involved defective appointments. See *supra* ¶ 47 (citing *County of Knox*, 188 Ill. 2d at 552, *Business & Professional People for the Public Interest*, 136 Ill. 2d at 245, *Castaneda*, 132 Ill. 2d at 309, and *Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n*, 200 Ill. App. 3d 151, 157 (1990)).

¶ 95       The majority claims that plaintiffs' allegations call into question the Merit Board's authority to act because, if the Merit Board is illegally constituted, then it lacks jurisdiction to proceed, and any order entered by it would be void. *Supra* ¶¶ 50, 63. The majority cites *Business & Professional People for the Public Interest*, 136 Ill. 2d at 243-44, and *Newkirk v. Bigard*, 109 Ill. 2d 28, 36 (1985), neither of which is an appointment case, for the proposition that a decision by an agency that lacks jurisdiction or the inherent power to make the particular order is void and may be attacked at any time or in any court, directly or collaterally. *Supra* ¶¶ 50, 63. But the idea that a statutorily invalid appointment renders an agency without jurisdiction and its orders void is a radical proposition that contradicts over a century's worth of this court's case law. Indeed, if the majority's assertion is correct, then the *de facto* officer doctrine could not exist.

¶ 96                    *DE FACTO* OFFICER DOCTRINE

¶ 97       The *de facto* officer doctrine holds that "[a] person actually performing the duties of an office under color of title is an officer *de facto*, and his acts as such officer are valid so far as the public or third parties who have an interest in them are concerned." *People ex rel. Chillicothe Township v. Board of Review*, 19 Ill. 2d 424, 426 (1960). It "assumes that an individual suffers no judicially cognizable injury when he is the subject of adverse governmental action that is legitimate in

- 25 -

all respects save that the official taking the action lacks lawful title to office." Kathryn A. Clokey, Note, *The De Facto Officer Doctrine: The Case for Continued Application*, 85 Colum. L. Rev. 1121, 1122 (1985). The doctrine has feudal origins, dating back to the 15th century. *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 48. It was first expressed in *The Abbe de Fontaine*, YB 9 Hen. 6, fol. 32b, Mich., pl. 3 (1430) (Eng.), https://www.bu.edu/phpbin/lawyearbooks/display.php?id=17322 [https://perma.cc/63J8-W6AU]. Clokey, *supra*, at 1125. "Over time, the doctrine has achieved 'practically universal acceptance by the courts.' " *Iowa Farm Bureau Federation v. Environmental Protection Comm'n*, 850 N.W.2d 403, 423 (Iowa 2014) (quoting *Herbst v. Held*, 190 N.W. 153, 155 (Iowa 1922)).

¶ 98 This court adopted the doctrine in *Schlenker v. Risley*, 4 Ill. 483, 485 (1842), and applied it faithfully for more than 150 years. See, *e.g.*, *Chillicothe Township*, 19 Ill. 2d at 426 ("A person actually performing the duties of an office under color of title is an officer *de facto*, and his acts as such officer are valid so far as the public or third parties who have an interest in them are concerned); *People v. O'Neill*, 33 Ill. 2d 184, 187 (1965) ("We think it is clear beyond question that the members of the Peoria County board of supervisors were at least *de facto* officers within the traditional definition of *Lavin v. Board of Commissioners of Cook County*, 245 Ill. 496, 505-06 [(1910)]. Their acts in levying, extending and collecting taxes cannot therefore be attacked because of some alleged defect in the apportionment of their membership."); *People ex rel. Rusch v. Wortman*, 334 Ill. 298, 302 (1928) ("The courts uniformly hold that the acts of officers *de facto*, so far as they affect third parties or the public, are as valid as those of officers *de jure*."); *Stott v. City of Chicago*, 205 Ill. 281, 286 (1903) (acts of a *de facto* officer are valid so far as the rights of the public or of third persons having an interest in such acts); *People ex rel. Stuckart v. Knopf*, 183 Ill. 410, 413 (1900).

¶ 99 The reason for this rule was expressed long ago in *Barlow v. Standford*, 82 Ill. 298, 302 (1876), where this court stated:

"An officer *de facto* is defined to be one who has the reputation of being the officer he assumes to be, in the exercise of the functions of the office, and yet is not a good officer in point of law. The official acts of such an officer are always regarded as worthy of full faith and credit. *Any other rule would be disastrous to public interests*." (Emphasis added.)

The United States Supreme Court has explained that

" '[t]he de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office.' " *Ryder v. United States*, 515 U.S. 177, 180 (1995) (quoting 63A Am. Jur. 2d, *Public Officers and Employees* § 578, at 1080-81 (1984)).

See also Clokey, *supra*, at 1131 ("[w]ithout the doctrine, uncertainty would cloud every action taken by officials who had not previously demonstrated perfect title"). As the Supreme Court of North Carolina explained in *In re Wingler*, 58 S.E.2d 372, 376 (N.C. 1950):

"The *de facto* doctrine is indispensable to the prompt and proper dispatch of governmental affairs. Endless confusion and expense would ensue if the members of society were required to determine at their peril the rightful authority of each person occupying a public office before they invoked or yielded to his official action. An intolerable burden would be placed upon the incumbent of a public office if he were compelled to prove his title to his office to all those having occasion to deal with him in his official capacity. The administration of justice would be an impossible task if every litigant were privileged to question the lawful authority of a judge engaged in the full exercise of the functions of his judicial office."

¶ 100    In *People ex rel. Hicks v. Lycan*, 314 Ill. 590 (1924), this court specifically addressed whether the official acts of an improperly constituted board of review were void. In that case, a taxpayer raised a challenge about the political composition of a board of review. The relevant statute required that each county board of review "consist of two members affiliated with the political party polling the highest vote and one member of the party polling the second highest vote at the general election in the county prior to the time any appointment is made." *Id.* at 592. The Edgar County Board of Review was improperly composed of one member of the party polling the highest vote and two members of the party polling the second highest vote. This court held:

"*This fact did not, however, make the action of the board of review so constituted void.* A person actually performing the duties of an office under color of title is an officer *de facto*, and his acts as such officer are valid so far as the public or third parties who have an interest in them are concerned. (*People v. Lieb*, 85 Ill. 484; *People v. Bangs*, 24 [Ill.] 184; *Leach v. People*, 122 [Ill.] 420.) Whether the board of review was legally constituted or not, the persons acting as such board were performing the duties of the board with apparent right under color of office, and their acts were valid as to the public and persons having an interest in them." (Emphasis added.) *Id.* at 593.

The majority is simply wrong when it states that any actions of the Merit Board would be void if it was improperly constituted. *Supra* ¶¶ 50, 63.

¶ 101       This court has further held that a *de facto* officer's authority continues until he or she is removed by a proper authority in a *quo warranto* proceeding. In *Samuels v. Drainage Commissioners*, 125 Ill. 536 (1888), the defendants argued that a drainage assessment had been made by commissioners who were neither officers *de jure* nor *de facto* and that therefore the assessments were void. This court rejected that argument, explaining:

"The legislature, by statute, has created, under constitutional authority, such an officer as commissioner of drainage districts. It is alleged the 'Central Special Drainage District,' in Mason county, was duly organized under the act of the General Assembly, in force July 1, 1885, and that afterwards petitioners were elected commissioners, and that they entered upon their duties as such, and are now acting. The default of defendants admits these allegations of the bill, and the court found, from the evidence, such was the fact. There being such an office, and petitioners having assumed the duties of such office, and now acting commissioners of the drainage district, they are *de facto* officers, and their official acts will be held to be valid until their right to exercise the duties of such office is called in question by *quo warranto*, and they shall be dispossessed of all power under the statute." *Id.* at 540.

Here, the offices of the Merit Board members have not been called into question by *quo warranto*, and thus their official acts are valid.

¶ 102    This court first began to stray from the traditional understanding of the *de facto* officer doctrine in *Daniels*, 201 Ill. 2d 160. The idea that an improper appointment would render all the acts of an agency void was first introduced by two justices of this court in the lead opinion in *Daniels*. The lead opinion held that the invalid appointment of two members of the Industrial Commission (Commission) was void and a nullity from its inception. *Id.* at 165. Thus, the lead opinion held that the Commission's actions could be attacked at any time, in any court, either directly or collaterally. *Id.* at 166.[5] This court vacated the Commission's award and remanded for a decision by a legally constituted panel. The lead opinion rejected application of the *de facto* officer doctrine on the following basis:

> "Finally, we reject the Commission's claim that the decision in this case can be validated on the grounds that Kane and Reichart were *de facto* officers. The doctrine recognizing *de facto* public officers prevents third parties or members of the public from raising collateral challenges to a public officer's qualifications to hold office if considerations of public policy require the officer's acts to be considered valid. See *People ex rel. Rusch v. Wortman*, 334 Ill. 298, 301-02 (1928). No considerations of public policy militate in favor of preventing workers' compensation claimants from challenging the legal status of the commissioners who passed on their claims where, as here, the challenge is raised on direct review of the workers' compensation award and the commissioners were appointed in a manner that threatens the Act's basic objectives." *Id.* at 166-67.

In other words, according to the lead opinion in *Daniels*, the way the *de facto* officer doctrine works is that the court asks in every case in which the issue arises whether it can identify a specific public policy reason to apply it. Only if the court can identify such a specific public policy will it apply the doctrine. This position has no foundation in this court's jurisprudence, and it is not even supported by the one

---

[5]Justices McMorrow and Freeman concurred in the result but did not agree with the lead opinion that the participation of invalidly appointed commissioners rendered the Commission's decisions void. *Daniels*, 201 Ill. 2d at 173 (McMorrow, J., specially concurring, joined by Freeman, J.) The specially concurring justices agreed that the *de facto* officer doctrine validated the Commission's decisions. *Id.* These justices, however, would have granted Daniels relief on the more limited basis that he was the party that brought the illegalities to light. Thus, the concurring justices would have allowed Daniels relief but no others who raised the same challenge. *Id.* at 176.

decision cited in the lead opinion. *Wortman* did *not* hold that a court makes a case-by-case determination of whether an identifiable public policy supports application of the *de facto* officer doctrine. Rather, the *Wortman* court held:

"The law validates the acts of *de facto* officers as to the public and third persons upon the ground, though not officers *de jure*, they are in fact officers whose acts public policy requires should be considered valid. [Citations.]

The courts uniformly hold that the acts of officers *de facto*, so far as they affect third parties or the public, are as valid as those of officers *de jure*." *Wortman*, 334 Ill. at 301-02.

In other words, *Wortman* held that there is a *general* public policy validating the acts of *de facto* officers. The position of the *Daniels* lead opinion cannot be squared with more than a century's worth of this court's case law. Justice Fitzgerald was correct in his dissent in *Daniels* that the Commission's award should have been upheld because the invalidly appointed commissioners were *de facto* officers. *Daniels*, 201 Ill. 2d at 178-81 (Fitzgerald, J., dissenting). The notion that the acts of an improperly constituted agency are void cannot be reconciled with this court's case law, and this position has not been subscribed to by a majority of this court.

¶ 103    The lead opinion in *Daniels* also misunderstood the difference between collateral and direct challenges for purposes of the *de facto* officer doctrine. As noted above, the *Daniels* lead opinion recognized that members of the public or third parties could not raise collateral challenges to a public officer's qualifications to hold office. *Id.* at 166 (lead opinion). It then noted that, in the case before it, the challenge was raised on direct review of the commission's award. *Id.* at 166-67. However, for purposes of an officeholder's right to hold office, the terms "direct attack" and "collateral attack" have specialized meanings. As properly stated by the appellate court in *Lopez*, 2018 IL App (1st) 170733, ¶ 49:

"Because at its core the doctrine limits the ability of a plaintiff 'to challenge governmental action on the ground that the officers taking that action are improperly in office' (*Andrade*, 729 F.2d at 1493-94), the doctrine operates in a way that distinguishes between 'direct' and 'collateral' attacks on an officer's authority. *SW General, Inc. v. National Labor Relations Board*, 796 F.3d 67, 81 (D.C. Cir. 2015) (citing *Andrade*, 729 F.2d at 1496). A collateral attack

- 30 -

challenges 'government *action* on the ground that the officials who took the action were improperly in office.' (Emphasis in original and internal quotation marks omitted.) *Id.* A direct attack by contrast, challenges 'the *qualifications* of the officer rather than the actions taken by the officer.' (Emphasis in original and internal quotation marks omitted.) *Id.* Under the traditional *de facto* officer doctrine, only direct attacks are permitted and must be brought via a *writ of quo warranto*. *Id.*; see also *Vuagniaux*, 208 Ill. 2d at 187 ('Pursuant to the doctrine, litigants may not assert collateral challenges to the officer's qualifications to hold office as a means of contesting the legality of the officer's acts.')." (Emphasis in original.)

See also Clokey, *supra*, at 1124 (the *de facto* officer doctrine "bars collateral title challenges—that is, attempts to litigate title via an attack on the actions taken, rather than in a direct action where the sole issue is validity of title. Official titles may be challenged directly through the statutorily prescribed quo warranto action.").

¶ 104    The challenge in *Daniels* was clearly collateral. *Daniels* did not involve a *quo warranto* proceeding to remove the invalidly appointed commissioners from office. Rather, Daniels was trying to undo the Commission's award in his case because it had been entered by an improperly constituted panel. The issue in Daniels's case was whether he was entitled to compensation, not whether the Commission's members had been validly appointed, and the individual commissioners were not parties in Daniels's case. This was a textbook collateral challenge. The lead opinion appears to have been thrown off track because the issue was first raised on *direct review*. But this is an entirely different concept, and it did not transform Daniels's challenge to the Commission's authority into a direct one. See *Daniels*, 201 Ill. 2d at 184 (Thomas, J., dissenting, joined by Fitzgerald and Garman, JJ.) ("some confusion is bound to creep in whenever the same adjective precedes two distinct legal concepts").

¶ 105    The court next considered the *de facto* officer doctrine in *Vuagniaux*. That case involved a chiropractor, Thad Vuagniaux, who was reprimanded by the Department of Professional Regulation (Department) for violating a provision of the Medical Practice Act of 1987 (225 ILCS 60/26 (West 1998)). *Vuagniaux*, 208 Ill. 2d at 178. In the disciplinary proceeding before the Department's Medical Disciplinary Board, Vuagniaux moved to exclude the sole chiropractic member on the Medical

Disciplinary Board, Lacy Cook, on the basis that she would be prejudiced against him and the chiropractic theories that he followed. *Id.* at 181-82. The administrative law judge found that Cook was not prejudiced but agreed to grant Vuagniaux's motion. *Id.* at 182. After Cook was excluded, the Department moved to appoint a "Special Chiropractor" to the Medical Disciplinary Board so that it would include at least one chiropractic member when it considered Vuagniaux's case. *Id.* The Medical Disciplinary Board granted the motion and appointed Roger Pope to serve on the Medical Disciplinary Board for the purposes of Vuagniaux's case. *Id.* Vuagniaux objected to Pope's appointment on the basis that it violated the Medical Practice Act's requirement that appointments to the Medical Disciplinary Board are to be made by the governor with the advice and consent of the Senate. *Id.* The objection went unheeded. *Id.* The Medical Disciplinary Board recommended a fine and a reprimand. The Department's director adopted the recommendation, and the Department issued a reprimand and ordered Vuagniaux to pay a $2500 fine. *Id.* at 183.

¶ 106    On administrative review, the circuit court set aside the Department's decision and dismissed the complaint. *Id.* at 184. Among the reasons that the court dismissed the complaint were that the appointment of Pope was not authorized by law and was unconstitutional and that the statutory composition of the Medical Disciplinary Board violated due process and equal protection. *Id.* The Department appealed directly to this court based on the circuit court's ruling that portions of the Medical Practice Act were unconstitutional. *Id.* This court determined, *inter alia*, that Pope's unlawful appointment meant the Medical Disciplinary Board was not lawfully constituted at the time it recommended that Pope be reprimanded. *Id.* at 186. Thus, this court held that the Department's decision was invalid because it was based on recommendation of a board that was not lawfully constituted. *Id.*

¶ 107    This court noted that the Department had not argued that the *de facto* officer doctrine validated the Medical Disciplinary Board's recommendation. *Id.* Nevertheless, this court went on to explain why it believed that the *de facto* officer doctrine would not apply:

"Under the *de facto* officer doctrine, a person actually performing the duties of an office under color of title is considered to be an officer *de facto*, and his acts as such an officer are valid so far as the public or third parties who have an

interest in them are concerned. *People ex rel. Chillicothe Township v. Board of Review*, 19 Ill. 2d 424, 426 (1960). Pursuant to the doctrine, litigants may not assert collateral challenges to the officer's qualifications to hold office as a means of contesting the legality of the officer's acts. *Daniels v. Industrial Comm'n*, 201 Ill. 2d at 174 (McMorrow, J., specially concurring, joined by Freeman, J.).

The case before us does not involve the effects of an officer's acts on a member of the public or a third party, and the officer's qualifications to act are not being contested in a collateral proceeding. The challenge to Pope's authority to act as a member of the Board was raised *in the proceeding in which Pope was appointed, at the time the appointment was made*, by a doctor whose case was directly affected by the appointment, to the tribunal responsible for considering the disciplinary charges against the doctor, and before the tribunal considered the doctor's case on the merits or made its recommendations. The *de facto* officer doctrine is therefore inapplicable." (Emphasis added.) *Id.* at 186-87.

¶ 108 The majority asserts that *Vuagniaux* stands for the proposition that, "before being subjected to an administrative proceeding, a party should have some avenue to timely question and verify that the agency has authority to act." *Supra* ¶ 73. The decision is much narrower than that. In *Vuagniaux*, the Medical Disciplinary Board member who was challenged was appointed in that specific proceeding solely for the purpose of hearing that one case, and his appointment was challenged in that proceeding at the time it was made. This is a circumstance that will rarely occur.

¶ 109 Moreover, certain statements in *Vuagniaux* could cause confusion if applied outside the context of the unusual facts of that case. Vuagniaux was challenging the authority of the Medical Disciplinary Board to act in his case because of an unlawful appointment. Typically, this is a collateral attack that is barred by the *de facto* officer doctrine. Nevertheless, a *quo warranto* proceeding would not have made sense, as the appointment was made solely for the purpose of deciding this one case. Moreover, as the appointment was literally made in that case and the challenge was made at the time of the appointment, the facts do not fit comfortably into the typical direct-versus-collateral-attack dichotomy. Similarly, *Vuagniaux*'s statement that Vuagniaux was not a third party could cause confusion if applied in

a different context. *Vuagniaux* said that the case before it did not involve the officer's acts on a member of the public or a third party but rather on a doctor whose case was directly affected by the appointment. *Vuagniaux*, 208 Ill. 2d at 187. But, in a typical *de facto* officer situation, a person in Vuagniaux's position would unquestionably be a third party. For purposes of the *de facto* officer doctrine, the first party is the officeholder, and the second party is the State. David M. Lawrence, *The Law of De Facto Officers*, 124 U.N.C. Sch. Gov't, at 2 n.1 (2010). "A person, though, who applies to a de facto officer for specific action or who is the subject of action by a de facto officer is clearly not a second party." *Id.*

¶ 110    Our case law bears this out. In *Lycan*, the person who brought a challenge to the composition of the board of review was a taxpayer who was contesting an assessment imposed by the board. His objections to the board's composition were made in the proceeding in which he objected to the assessment. This court rejected his challenge on the basis that the board members were officers *de facto* and therefore their acts were valid so far as third parties or members of the public were concerned. *Lycan*, 314 Ill. at 593. Thus, a person who is the subject of action taken by a board is typically considered a third party for purposes of the *de facto* officer doctrine. To the extent that Vuagniaux was not a third party, it was only because under the unique facts of that case a *quo warranto* action would not have made sense.

¶ 111    Neither *Daniels* nor *Vuagniaux* provides any reason for this court to stray from the traditional understanding of the *de facto* officer doctrine. No position in *Daniels* garnered a majority of the court, and *Vuagniaux* set forth a narrow holding applicable to unusual facts. Moreover, the lead opinion in *Daniels* contained significant misstatements of law that cannot be reconciled with this court's cases or the common-law *de facto* officer doctrine.

¶ 112    Unfortunately, the majority has chosen to repeat the mistakes of *Daniels* and to broaden *Vuagniaux*'s holding rather than apply the *de facto* officer doctrine in the manner this court did for more than a century. The majority states:

"Significantly, the *de facto* officer doctrine is applied as a defense to an attack on the acts of an officer or appointee in a collateral proceeding. *Daniels*, 201 Ill. 2d at 166 (citing *People ex rel. Rusch v. Wortman*, 334 Ill. 298, 301-02 (1928)). The initiation of a collateral proceeding necessarily requires a prior act

- 34 -

or judgment that is, or may be, subject to attack. See generally Black's Law Dictionary 329 (11th ed. 2019) (defining 'collateral attack' as '[a]n attack on a judgment in a proceeding other than a direct appeal'). Thus, the legal concept of a collateral attack presumes that some official act or decision has occurred." *Supra* ¶ 72.

Rather than citing or discussing any of the cases or secondary authorities that have explained the difference between a direct and collateral proceeding for the purposes of the *de facto* officer doctrine, the majority simply cites the Black's Law Dictionary definition of "collateral attack." However, this definition does not help the majority. Applying that definition, the majority holds that this cannot be a collateral attack because no official act or decision has occurred. But what is being attacked are the appointments to the Merit Board, and these *have* occurred. If the right of these Merit Board members to hold office were being challenged in a *quo warranto* action, that would be a direct attack. Here, plaintiffs are arguing that allegedly invalid appointments deprive the Merit Board of the right to act in their disciplinary proceedings. This attack on their office is unquestionably collateral. See *Lopez*, 2018 IL App (1st) 170733, ¶ 49; see also *Pietryla v. Dart*, 2019 IL App (1st) 182143, ¶ 13 (challenging actions of Merit Board on the basis of invalid appointments is a "quintessential collateral attack that is ordinarily barred by the *de facto* officer doctrine"); Clokey, *supra*, at 1124.

¶ 113    The majority further holds that the *de facto* officer doctrine does not apply because plaintiffs raised their challenge before the Merit Board took any action in their case. *Supra* ¶ 75. But, as already explained above, this court has held that *de facto* officers retain authority to act until "their right to exercise the duties of such office is called in question by *quo warranto*, and they shall be dispossessed of all power under the statute." *Samuels*, 125 Ill. at 540. *Quo warranto* is the proper procedure to raise challenges to an officer's title. See *Osborn v. People ex rel. Lewis*, 103 Ill. 224, 228 (1882) (alleged improper organization of drainage district could be challenged only by *quo warranto*; court explains this "must be so," otherwise "[e]very proceeding before tribunals and officers, if permitted, would lead to an inquiry whether they were legally acting"); Lawrence, *supra*, at 2 ("[t]he procedural element of the [*de facto* officer] doctrine holds that a court will not allow a collateral attack on the status of an apparent officeholder but will hear such a challenge only in a direct action in the nature of quo warranto"); Clokey, *supra*, at

1124 ("[t]he de facto officer doctrine does not entirely insulate official titles from judicial scrutiny. It merely bars collateral title challenges—that is, attempts to litigate title via an attack on the actions taken, rather than in a direct action where the sole issue is validity of title. Official titles may be challenged directly through the statutorily prescribed quo warranto action"). No *quo warranto* proceeding was brought against the members of the previous Merit Board, nor has one been brought against the members of the current Merit Board.

¶ 114    In Illinois, the *quo warranto* procedure is set forth in article XVIII of the Code of Civil Procedure. 735 ILCS 5/18-101 *et seq.* (West 2018). The statute allows an action in *quo warranto* whenever "[a]ny person usurps, intrudes into, or unlawfully holds or executes any office, or franchise, or any office in any corporation created by authority of this State." *Id.* § 18-101(1). The action is brought in the name of the People of the State of Illinois by either the attorney general or the state's attorney of the proper county. *Id.* § 18-102. An interested citizen wishing to bring an action must first ask the attorney general or state's attorney to bring the action. If the attorney general or state's attorney refuses or fails to act, the citizen may bring the action after providing notice to the attorney general, the state's attorney, and the adverse party and receiving leave of court. *Id.* As Presiding Justice Schmidt noted in his dissent in *Watson v. Waste Management of Illinois, Inc.*, 363 Ill. App. 3d 1101, 1106-07 (2006) (Schmidt, P.J., dissenting):

"It seems clear from the *quo warranto* statute that the legislature intended to limit the ability of private individuals to file suit challenging the right of one to hold public office. There can be no doubt that the statute requires a would-be-private plaintiff to jump through enough hoops to fatigue an Olympic gymnast. The intent is clear. If all of this can be avoided by simply filing a declaratory judgment action, the *quo warranto* statute is meaningless. It would seem that both the common law and the *quo warranto* statute were born of the commonsense recognition that it is not in the public interest to allow individuals, without restriction, to file lawsuits challenging the authority of public officials to act. Such lawsuits, in sufficient number, could easily paralyze or bankrupt a unit of government. Any suit challenging the right of an elected public official to act must be brought in *quo warranto*. See *People ex rel. Turner v. Lewis*, 104 Ill. App. 3d 75, 432 N.E.2d 665 (1982); *People ex rel.*

> *Freeport Fire Protection District v. City of Freeport*, 90 Ill. App. 3d 112, 412 N.E.2d 718 (1980)."

¶ 115    The majority contends that plaintiffs should not have to proceed in *quo warranto* because they want to challenge all the members of the previous Merit Board as well as all the members of the current Merit Board. *Supra* ¶ 80. Thus, according to the majority, *quo warranto* would not be a judicially efficient or an economical means of resolving plaintiffs' claims. The statute, however, contains no language indicating that it does not apply where a person wishes to challenge more than one officeholder. The majority also notes that, if the attorney general and the state's attorney refused to act and if the circuit court denied plaintiffs leave to file, then plaintiffs would have no avenue to challenge the Merit Board's authority. According to the majority, this is unacceptable because "individuals must have a legal process available to redress specific legitimate claims." *Supra* ¶ 81. But the possibility of the state's attorney and attorney general refusing to act and the circuit court denying leave to file exists in *every quo warranto* case. If the majority is correct that this possibility means that a plaintiff can simply ignore the *quo warranto* statute, then the majority has rendered the statute a dead letter.

¶ 116    Moreover, the majority's belief that the plaintiffs have suffered an injury that needs redress is entirely speculative. As noted earlier, the *de facto* officer doctrine "assumes that an individual suffers no judicially cognizable injury when he is the subject of adverse governmental action that is legitimate in all respects save that the official taking the action lacks lawful title to office." Clokey, *supra*, at 1122. The reason that collateral challenges to title are usually barred is that title requirements generally protect public, rather than private, interests. *Id.* at 1129-30.

> "The challenger, in most cases, can demonstrate only a speculative connection between the title defect and the action taken. While the de facto officer would not have taken this particular action if he had not been installed in office, there is no indication that the impact on the individual would have been any different if the acting official had held perfect title." *Id.* at 1130.

¶ 117    As Justice McMorrow noted in her special concurrence in *Daniels*, there can be situations in which a statute's appointment procedures *are* designed to protect individuals subject to the officer's authority, and in these situations the *de facto* officer doctrine should not apply:

"It also has been held that the *de facto* officer doctrine should not be invoked when an officer's appointment is in violation of a statute and the officer lacks certain qualifications which were statutorily required for the benefit and protection of the individual subject to the officer's authority. See, *e.g.*, *United States v. Beltran*, 306 F. Supp. 385 (N.D. Cal. 1969) (statutory requirement that draft status be determined by 'neighbors' was held sufficiently important to allow draft resister to challenge qualifications of draft board members)." *Daniels*, 201 Ill. 2d at 175 (McMorrow, J., specially concurring, joined by Freeman, J.).

Justice McMorrow did not believe that this exception precluded application of the *de facto* officer doctrine to the Industrial Commission appointments at issue in that case. *Id.*

¶ 118     Neither should that exception apply to the challenges at issue here. *Taylor v. Dart*, 2017 IL App (1st) 143684-B, ¶ 37, held that an interim appointment to the Merit Board was not authorized under section 3-7002 the Counties Code (55 ILCS 5/3-7002 (West 2012)). Accordingly, the court held that the Merit Board's decision in that case had to be vacated and the cause remanded for a new hearing before a lawfully constituted board. *Taylor*, 2017 IL App (1st) 143684-B, ¶ 46. But the legislature then amended the statute to allow for interim appointments. See Pub. Act 100-562, § 5 (eff. Dec. 8, 2017) (amending 55 ILCS 5/3-7002). Clearly, then, the previous disallowance of interim appointments was not for the benefit and protection of deputy sheriffs who appear before the Merit Board. It is difficult to see how deputy sheriffs would be in any way prejudiced by appearing before a board that either did or did not have members who were appointed for less than six-year terms. Similarly, it is difficult to see how provisions setting forth the number of Merit Board members or providing for staggered terms could be considered enacted for the benefit of deputy sheriffs who appear before the Merit Board. And this court has already applied the *de facto* officer doctrine to a situation where a party challenged the political composition of a board. See *Lycan*, 314 Ill. at 593. Thus, the types of challenges plaintiffs bring here would not fit into the exception to the *de facto* officer doctrine noted by Justice McMorrow in *Daniels*. The majority has not even tried to argue that the statutory appointment procedures at issue were designed to protect deputy sheriffs who appear before the Merit Board, nor has the majority made the case that plaintiffs would be prejudiced by having

their cases adjudicated by this Merit Board. I thus see no reason not to apply the *de facto* officer doctrine.

¶ 119     That leaves only the question of whether this court should recognize a "first challenger" exception to the *de facto* officer doctrine. In her *Daniels* special concurrence, Justice McMorrow argued that, although the *de facto* officer doctrine operated to validate the actions of the unlawfully appointed commissioners, the party before the court should still be granted a new hearing before a lawfully constituted panel. *Daniels*, 201 Ill. 2d at 176-77 (McMorrow, J., specially concurring, joined by Freeman, J.) Justice McMorrow believed that such a rule would give parties an incentive to bring illegal appointments to light, while still preserving the public's interest in "preserving the validity of a large multitude of commission decisions." *Id.* at 176. The Appellate Court, First District, has since adopted the first challenger exception. See *Lopez*, 2018 IL App (1st) 170733, ¶ 58. The exception, however, has never been explicitly endorsed by more than two members of this court. Justice Thomas speculated in his dissent from denial of rehearing in *Baggett* 201 Ill. 2d at 205 (Thomas, J., dissenting upon denial of rehearing, joined by Fitzgerald and Garman, JJ.), that the majority was denying the petition for rehearing on the basis that it had accepted the first challenger exception. Nevertheless, the majority in *Baggett* did not state why it was denying the petition for rehearing. The court in *Bless v. Cook County Sheriff's Office*, No. 13 C 4271, 2019 WL 4345337, *9 (N.D. Ill. Sept. 12, 2019), warned against reading too much into *Baggett*'s denial of rehearing and pointed out that "there is little indication that Justice McMorrow's first-challenger principle has been accepted by more than two Justices on the Illinois Supreme Court."

¶ 120     This court should not adopt the first challenger exception. The case against the exception was thoroughly made by Justice Thomas in his dissent from denial of rehearing in *Baggett* and need not be repeated in detail here. See *Baggett*, 201 Ill. 2d at 204-09 (Thomas, J., dissenting upon denial of rehearing, joined by Fitzgerald and Garman, JJ.). In *Bless*, the court noted that "Justice Thomas's concerns about the rule's unintended consequences help explain the Appellate Court's recent struggles to fashion a consistent and equitable rule." *Bless*, 2019 WL 4345337, *9. In sum, the exception violates the principle that identically situated litigants be treated alike (*Baggett*, 201 Ill. 2d at 205 (Thomas, J., dissenting, joined by Fitzgerald and Garman, JJ.)) and requires this court to breach its "fundamental duty

to ensure that the law is administered fairly and equally" (*id.* at 209). Moreover, determining who is a "first challenger" is fraught with difficulty (*id.* at 208), and the "incentives" rationale endorsed by Justice McMorrow is problematic because most litigants who attempt to bring illegal appointments to light will not get relief (*id.* at 207-08). Finally, "[l]itigation is not a raffle, and appellate relief should not be a door prize." *Id.* at 208. For all these reasons, this court should not endorse a first challenger exception.

¶ 121                                        CONCLUSION

¶ 122        The *de facto* officer doctrine, as it existed in this state for more than a century, mandates dismissal of plaintiffs' complaint. Nothing in this court's decisions in *Daniels* or *Vuagniaux* requires us to depart from the traditional understanding of the *de facto* officer doctrine. Even if one or more of plaintiffs' challenges are well founded, the members of the Merit Board are at least *de facto* officers, and none of them have been challenged in a *quo warranto* proceeding. No exception to the *de facto* officer doctrine applies on these facts. Accordingly, the Merit Board had the lawful authority to render decisions in plaintiffs' cases. I would reverse the appellate court.

¶ 123        JUSTICES GARMAN and THEIS join in this dissent.