(No. 60163.—

JOHN F. THAXTON, Appellant, v. ELMER W. WALTON, Mayor, *et al.*, Appellees.

*Opinion filed May 24, 1985.*

Cornfield and Feldman, of Chicago (Jacob Pomeranz, of counsel), for appellant.

John W. Couter, of Decatur, for appellees.

JUSTICE RYAN delivered the opinion of the court:

In this case we must decide (1) whether a municipality may set off the salary paid to a *de facto* employee from the back pay owed to a wrongfully discharged civil service employee and (2) whether plaintiff is entitled to recover the attorney fees he incurred in bringing a *mandamus* action to compel his reinstatement.

On July 23, 1981, plaintiff, John F. Thaxton, a classified employee of the city of Decatur, was suspended without pay pending a hearing before the Decatur civil service commission to determine whether plaintiff's employment should be terminated. In early September the city hired another employee to replace plaintiff. Shortly thereafter, on September 18, 1981, the commission held a hearing concerning the charges against plaintiff, and on October 13, 1981, it ordered plaintiff discharged. On February 16, 1982, the circuit court of Macon County, sitting in administrative review, reversed the commission's decision. No appeal was taken from the court's action. The city, however, failed to reinstate plaintiff. As a result, on May 20, 1982, plaintiff filed a petition for *mandamus* in the circuit court of Macon County naming the commission, the city and various city officers and officials as defendants. In addition to seeking his reinstatement, plaintiff sought back pay and attorney fees involved in bringing the action. On September 3, 1982, the court ordered plaintiff reinstated to his former position.

In early 1983 the court denied plaintiff's request for attorney fees but awarded him back pay from the date of his suspension. The appellate court affirmed the denial of attorney fees but reversed on the issue of back pay, holding that the city could set off from the amount owed plaintiff the sums it paid to the *de facto* employee between October 13, 1981 (the date the commission ordered plaintiff discharged), and February 16, 1982 (the date the circuit court reversed the commission's decision). (122 Ill. App. 3d 266.) We allowed plaintiff's petition for leave to appeal (94 Ill. 2d R. 315(a)).

Initially we note that it is not disputed that the circuit court properly ordered plaintiff reinstated to his position with the city. Thus, no issues are raised concerning the basis for his discharge or the propriety of the procedures used to effectuate his removal, the arguments being limited solely to the questions of back pay and attorney fees.

We first consider the question of the amount of back pay to which plaintiff is entitled. The Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 1—1—1 *et seq.*) contains no provision for back pay for a wrongfully suspended or discharged civil service employee. It has long been recognized, however, that where an employee is reinstated following a determination that his suspension or discharge was illegal, he is entitled to recover his salary for the period that he was prevented from performing his duties, reduced by what he earned in other employment. *People ex rel. Bourne v. Johnson* (1965), 32 Ill. 2d 324; *People ex rel. Krich v. Hurley* (1960), 19 Ill. 2d 548; *Kelly v. Chicago Park District* (1951), 409 Ill. 91; 63A Am. Jur. 2d *Public Officers and Employees* sec. 297 (1984).

This court first confronted the issue presented here in *People ex rel. Sartison v. Schmidt* (1917), 281 Ill. 211, where, as a matter of public policy, the court held that

payment to a *de facto* officer or employee constituted a good defense against an action by the *de jure* officer or employee to recover the salary he would have earned but for the wrongful action of the State or municipality in removing him from his position. The court observed:

" 'It is important that the public offices should be filled, and that at all times persons may be found ready and competent to exercise official powers and duties. If, on a controversy arising as to the right of an officer in possession and upon notice that another claims the office, the public authorities could not pay the salary and compensation of the office to the *de facto* officer except at the peril of paying it a second time if the title of the contestant should subsequently be established, it is easy to see that the public service would be greatly embarrassed and its efficiency impaired. Disbursing officers would not pay the salary until the contest was determined, and this, in many cases, would interfere with the discharge of official functions.' [Citation.]" (281 Ill. 211, 215.)

For a general discussion of the right to setoff, see Annot., 64 A.L.R.2d 1375 (1959), supplementing Annot., 55 A.L.R. 997 (1928).

The rule announced in *Schmidt* was applied in numerous other cases (*e.g., Malloy v. City of Chicago* (1938), 369 Ill. 97; *McKinley v. City of Chicago* (1938), 369 Ill. 268; *Hittell v. City of Chicago* (1927), 327 Ill. 443; *People ex rel. Durante v. Burdett* (1918), 283 Ill. 124; *People ex rel. Trapp v. Tanner* (1956), 10 Ill. App. 2d 155), although it was held in *People ex rel. McDonnell v. Thompson* (1925), 316 Ill. 11, that the city could not set off payments made to the *de facto* employee after a judicial determination that the *de jure* employee had been wrongfully removed from his position.

Much of the controversy in this case concerns the interpretation to be given this court's decision in *Corbett v. City of Chicago* (1945), 391 Ill. 96. That *Corbett* created a certain amount of confusion is evident by the fact

that both the circuit and appellate courts relied on *Corbett* in reaching different conclusions. We find it unnecessary to indulge in a lengthy analysis of *Corbett*; limited to its facts, the case simply stands for the principle—not disputed in this case—that once there has been a judgment ordering the reinstatement of the *de jure* employee, payments made to the *de facto* employee may not be set off from the salary owed the *de jure* employee.

This court has not directly addressed the propriety of allowing a municipality to set off sums paid to a *de facto* employee since *Corbett* was decided in 1945. In *People ex rel. Hurley v. Graber* (1950), 405 Ill. 331, though, the court found, *inter alia,* that the circuit court had properly issued injunctions to prevent the demotion or removal of certain civil service employees. The court observed that the employees would have suffered irreparable injury since, under the authority of *Schmidt,* they would have been precluded from recovering the salaries paid to their *de facto* replacements. 405 Ill. 331, 351, citing *People ex rel. Sartison v. Schmidt* (1917), 281 Ill. 211.

Although this court has repeatedly followed the setoff rule established in *Schmidt,* we do not believe that the rule can be justified in light of the action taken by the legislature with respect to State civil service employees. In 1975 the legislature amended the Personnel Code (Ill. Rev. Stat. 1983, ch. 127, par. 63b101 *et seq.*) by adding section 11b, which provides:

> "Every employee reinstated for the period for which he was suspended, discharged or improperly laid off shall receive full compensation for such period *notwithstanding the fact that any person was employed to perform any duties of such employee during the time of such suspension, discharge or layoff.* *** [F]ull compensation shall mean compensation such suspended, discharged or laid off employee would have earned in the position classification

during the period of suspension, discharge or layoff less amounts earned by the employee from any other source and unemployment compensation payments received during such period." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 127, par. 63b111b.)

The legislative record reveals that the amendment—introduced as Senate Bill 845—was designed to "close a gaping hole in the Personnel Code" and to prevent what was described as "a serious transgression against [a State] employee who has been off work through no fault of his own." Specifically, the legislation was enacted to overcome the result of a Court of Claims decision which had precluded a wrongfully suspended State employee from recovering that portion of his salary which had been paid to his replacement. A rule which deprives an improperly suspended or discharged employee of the salary he would have earned, Senator Rock remarked, "makes no sense." We agree. As the Supreme Court of Arizona stated in *City of Phoenix v. Sittenfeld* (1939), 53 Ariz. 240, 88 P.2d 83:

"[I]f it be held that while an employee protected by civil service rules may secure his restoration to office by a long and tedious law suit, he must lose the salary for the period during which he was unjustly excluded, the tenure assured him by the system is like the well-known apples of Sodom—fair to the sight but crumbling to sterile ashes at the touch. In order to insure real protection to a civil service employee, it is necessary that when it appears that he has been illegally deprived of his position, he should be reimbursed for the loss of the salary which accompanies the position." 53 Ariz. 240, 247, 88 P.2d 83, 86.

Defendants point out that the city must provide services which are essential to the public health and safety. If it must keep a position open or hire at the risk of incurring a double payment, defendants assert, the public service will be greatly hampered. This argument loses its

forcefulness when one considers that the State, too, must provide services which are essential to the public health and safety. Nevertheless, the legislature chose by an overwhelming vote to adopt a policy of providing an employee with the salary he would have earned had he not been improperly removed from his position, reduced only by what the employee received from other sources. (The legislation passed by a unanimous vote in the Senate and by a vote of 136 in favor, 3 against and 9 voting present, in the House.) We think the policy is a sound one and can perceive of no reason for distinguishing between civil service employees employed by the State and those employed by a municipality.

Moreover, precluding a setoff for the sums paid to a *de facto* replacement will, we believe, serve to insure an expeditious review of the propriety of an employee's removal. A municipality has little, if any, incentive to promptly resolve the question of whether there was sufficient cause to suspend or discharge an employee when, in addition to being able to hire a replacement, it is assured that should its disciplinary action prove unjustified, the financial burden will be borne by the innocent employee.

Accordingly, we hold that plaintiff is entitled to recover full compensation, as defined in the Personnel Code (Ill. Rev. Stat. 1983, ch. 127, par. 63b111b), from July 23, 1981, the date he was illegally removed from his position, and we remand the cause to the circuit court for further proceedings consistent with this opinion. In light of our holding, we need not address plaintiff's contention that due process requires that he be given full back pay.

We next turn to a consideration of plaintiff's claim that he is entitled to recover the attorney fees he incurred in bringing the *mandamus* action. Plaintiff maintains he is entitled to recover the fees under the Civil

Rights Attorney's Fees Award Act of 1976 (42 U.S.C. sec. 1988 (1982)). Section 1988 provides in pertinent part that a court may award attorney fees in any proceeding to enforce a provision of section 1983. (42 U.S.C. sec. 1988 (1982).) As the appellate court observed, however, plaintiff's *mandamus* action was not based upon any violation of section 1983; indeed, no reference was made in his petition to either section 1983 or section 1988. Furthermore, the circuit court specifically found no constitutional violation, and given the record here, we are not prepared to say that its finding was erroneous. We therefore conclude that the appellate court properly affirmed the denial of attorney fees.

For the reasons stated, the judgment of the appellate court is affirmed insofar as it denied attorney fees and reversed insofar as it allowed a setoff against back pay. The cause is remanded to the circuit court of Macon County to determine, in accordance with the views expressed herein, the proper amount of back pay to which plaintiff is entitled.

*Affirmed in part and reversed*
*in part and remanded,*
*with directions.*