2024 IL App (1st) 230256

SECOND DIVISION
May 7, 2024

No. 1-23-0256

_____

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ROBERT BLESS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County |
| | ) | |
| v. | ) | 2021CH05831 |
| | ) | |
| THE COOK COUNTY SHERIFF'S OFFICE, and | ) | Honorable |
| THE COOK COUNTY SHERIFF'S MERIT | ) | Michael T. Mullen, |
| BOARD, | ) | Judge Presiding |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Ellis and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1       This is Robert Bless's second administrative review action about his firing from the Cook
County Sheriff's Office in 2011. The first review was conducted, in 2020, by a federal judge, who
vacated one of three findings that the Cook County Sheriff's Merit Commission (board) cited when
it ordered the termination of Bless's employment. The federal court remanded the action for the
board to determine whether there was still cause for the firing, and the board confirmed that firing
was warranted, effective 2011. Bless sought review of the board's remand decision in state court
and also contended that the federal ruling restored the status quo ante, which entitled him to $1.04
million in "back pay and benefits" that accrued during the federal proceedings. The circuit court
rejected all of Bless's claims. Bless appeals.

¶ 2     Bless served as a police officer with the Sheriff's Office from 1996 until the board voted to fire him in 2013. He was a third watch patrol officer in Rolling Meadows, Illinois.

¶ 3     During the last few years of his employment by the sheriff, Bless had "secondary employment" as a private attorney and as a county commissioner. The Sheriff's Office did not prohibit additional employment but required employees to annually obtain authorization from their supervisors. That approval was routinely given—in 2013, of the 115 officer secondary employment forms that were submitted in the Sheriff's Office police department, only two were denied, and both of those officers were defending proceedings before the board.

¶ 4     Bless's part-time secondary employment as an attorney began when he graduated from law school in 2004. From 2004 to 2008, he submitted secondary employment forms and received approval.

¶ 5     In September 2008, Bless sustained serious injuries to his neck and right shoulder when his squad car was struck head-on in Schaumburg, Illinois, while he was stopped and waiting for traffic to clear. He was placed on injured-on-duty (IOD) status and granted worker's compensation temporary total disability benefits because he was unable to perform the duties of a patrol officer.

¶ 6     In October and November 2008, Bless was wearing a cervical collar at all times while his neck injury healed. His treating neurosurgeon, Dr. Mina Foroohar, M.D., instructed him not to drive. During their appointment on December 1, 2008, Dr. Foroohar said Bless could remove the collar, but she was "recommend[ing] [he] continue to wear [it] when in [a] car or ambulating long distances" and that he "avoid driving."

¶ 7     December 2008 was also when Bless was sworn in as a newly elected member of the McHenry County Board. He began serving as a commissioner, in addition to working as an

attorney, all while collecting temporary total disability payments from the Sheriff's Office.

¶ 8     During an independent medical examination re-evaluation in January 2009, by neurosurgeon Dr. Sean A. Salehi, M.D., Bless reported that his neck pain had worsened when he began physical therapy and that he was not driving because of neck stiffness. Dr. Salehi wrote in his report that Bless "does not drive because he has neck stiffness" and "should also refrain from driving due to his limited cervical range of motion until the therapist feels his range of motion is adequate enough to be able to drive."

¶ 9     Bless was also seen by orthopedist Dr. William A. Heller, M.D., for an independent medical examination in late January 2009. Dr. Heller documented that Bless said his "spine injury is not significantly improved" and the physician concluded "The patient is unable to work at this time due to [the] cervical spine condition."

¶ 10    Contrary to what Bless was telling the medical personnel, he was driving hundreds of miles during this time frame, to and from his employment as a McHenry County commissioner. McHenry County was reimbursing Bless for the miles that he drove on commission business, including 114 miles to attend commission meetings on December 1, 16, and 17, 2008, and 37 miles for a commission meeting on January 6, 2009. Bless was reimbursed for driving a total of 190 miles on February 2, 3, 6, 9, and 17, 2009, and 193 miles due to meetings that were held on March 6, 9, 11, 17, and 20, 2009. The next month, he claimed a total of 185 miles on commission business on April 6, 8, 9, 13, and 21, 2009, and another 185 miles for attending meetings on May 4, 5, 11, 13, and 19, 2009. In June 2009, he attended one meeting, on the first of the month, and was reimbursed for driving 37 miles that month. In all, for the six month period between December 1, 2008 and June 1, 2009, Bless submitted over 900 miles for reimbursement.

¶ 11    Months earlier, Bless's employer questioned whether he was complying with the driving restrictions that were imposed because of his duty injury and that were preventing him from returning to work as a patrol officer. He was put under surveillance and was videoed driving on multiple occasions in February and March of 2009. When the investigation also showed that he had multiple secondary jobs, the question became whether he had authorization from his Cook County supervisors. Although Bless had received approval to work as an attorney for other years, the Cook County Sheriff's Office of Professional Review (OPR) determined that he did not have approval for the two-year period between January 1, 2009 and December 9, 2010. He also did not have approval to work as a McHenry County Commissioner, until he submitted a request on November 23, 2010 (halfway through his four-year term). In an interview with OPR, Bless claimed that he had submitted secondary employment authorization forms for the period under scrutiny. OPR concluded that this was a lie.

¶ 12    After more than two years of disability leave, Bless was medically cleared in November 2010 and returned to work as a patrol officer.

¶ 13    However, once OPR completed its investigation, Bless was de-deputized and relieved of law enforcement powers. The Sheriff's Office brought administrative charges against Bless in May 2011 and filed formal charges with the board in October 2011 recommending Bless's termination. In its complaint, the Sheriff's Office accused Bless of driving without first obtaining authorization from his physician, engaging in unapproved secondary employment, and lying to investigators.

¶ 14    Bless's conduct was alleged to be in violation of a handful of the department's Rules and Regulations, including 4.2, pertaining to communications and correspondence, "No member of the Department will make false official record(s), reports or report any inaccurate, false or improper

information." Also, 11.12, regarding secondary employment, "Approval must be obtained prior to accepting or commencing secondary employment." Bless was also charged with violating 13.1, "Members will conduct themselves on or off-duty in such a manner as to reflect favorably on the Department. Members will not engage in conduct which discredits the integrity of the Department or its employees or which impairs the operation of the Department."

¶ 15    On May 3, 2013, after considering the testimony of 10 witnesses and documentary evidence, such as Bless's mileage reimbursement claims, the board ordered the termination of Bless's employment. The sheriff's witnesses included investigative and medical personnel, such as Dr. Salehi, who had examined Bless in November 2008 and warned him against driving and reexamined him in early 2009 and warned him not to drive until a physical therapist determined that his range of motion had returned. All of Bless's witnesses were colleagues who testified that he handed his sergeant a secondary employment request form in late January or early February 2009, which the board noted would not have covered the entire time period at issue.

¶ 16    The board's termination decision was based on its findings that Bless drove in violation of his duty injury status, was not authorized to engage in secondary employment at any time while receiving disability pay, and lied when he told investigators that he had a secondary employment form on file for every year. The board said, "What is extremely troubling here is that the evidence demonstrates the Respondent lied to the Petitioner so he could work two additional jobs and still get paid by the Cook County taxpayers by claiming he was injured." The board also said:

> "[T]he egregiousness of the Respondent's acts sets this matter apart from others. This Respondent was sworn to uphold the public trust of not just the taxpayers of Cook County but also the public trust of the taxpayers of McHenry County. The Board finds that the

Respondent maliciously breached that trust. The evidence clearly demonstrates that the Respondent lied to the Cook County Sheriff's Office, Office of Professional Review so [as] to continue looting Cook County taxpayers by continuing to receive temporary disability checks from the Insurance Fund while getting paid as an attorney and while getting paid as a McHenry County Commissioner."

¶ 17    The board was appalled that Bless was not only driving in violation of his IOD status, but also getting reimbursed by taxpayers for the mileage:

"What this Board finds extremely egregious is that *** the Respondent while under injured duty status was being reimbursed for car travel mileage (many times traveling up to 64 miles ***) by McHenry County taxpayers even after being directed not to drive by his own doctors and the Cook County Risk Management Office."

¶ 18    After he was fired, Bless filed a lawsuit in federal court, attributing his discharge to racial discrimination and political retaliation against him as a white Republican (Sheriff Dart was a Democrat) and including a state law claim for review of the administrative proceeding that resulted in his dismissal.

¶ 19    The district court granted partial summary judgment against the federal claims and denied in part and granted in part Bless's request for administrative review. See *Bless v. Cook County Sheriff's Office*, No. 13 C 4271, 2020 WL 4437666 (N.D. Ill. Aug. 3, 2020). In order to address his argument that he is owed wages that accrued while he litigated the federal and then state claims, we must detail the district court's ruling.

¶ 20    More specifically, the federal judge rejected Bless's claim that the board's decision was vague to the extent that it was unreviewable and concluded that the board had effectively

summarized the evidence, arrived at factual findings, and linked those findings with its legal conclusions. The district court also affirmed the board's finding that Bless violated the Sheriff's Office's policies and his IOD status when he drove between September 2008 and November 2010. In addition, the district court affirmed the board's finding that Bless had secondary employment without prior authorization, noting that "Bless admitted to the Board, he never received approval for his work as a lawyer and commissioner during 2009."

¶ 21    Some of Bless's arguments were persuasive to the district court. Bless argued that three patrol officers and a sergeant testified to their recollections that Bless had given the sergeant a secondary employment request form for Bless's legal practice in early 2009 and that Bless was " 'never informed that his ability to engage in secondary employment was not approved.' " *Id.* at *5. According to the district court, however, this argument "misses the point." "The rules make employees responsible for securing approval before starting a second job, not just for submitting a request." *Id.* Nevertheless, the district court vacated the board's finding that Bless lied to investigators about having a secondary employment request form on file. The district court cited testimony that each form must pass through six different supervisors before arriving in the personnel office and that there was no system in place to ensure that that happened. According to the district court, the manifest weight of the evidence did not indicate that Bless lied during the investigation. The district court vacated "that aspect" of the board's decision and concluded, because " 'an important pillar of the Board's discharge decision [is] vacated,' " (*id.* at *7 (quoting *McRay v. Ross*, No. 17 C 01588, 2018 WL 2432164, at *10 (N.D. Ill. May 30, 2018))) "that decision must be revisited." *Id.* The district court specified that it was "remand[ing] this case to

the Board for it to decide whether the vacatur of the false-statement finding alters its conclusion that discharge is warranted." *Id.*

¶ 22 The district court also said that it was unclear from the board's remarks about Bless's " 'extremely egregious' " behavior whether the board was commenting on Bless's purported lie to investigators or some other deliberate act(s) to conceal his secondary employment. *Id.* Accordingly, the district court vacated the finding and proposed that on remand, the board "clarify" the factual basis for its remark: "On remand, the Board should clarify whether it determined that [in addition to lying to OPR investigators] Bless practiced other forms of deliberate concealment, and if so, should explain that conclusion." *Id.*

¶ 23 The district court's third concern was that the board did not clearly indicate the factual reasons for concluding that Bless violated other general rules regarding officer conduct. This finding was also vacated and the court specified, "To the extent that those rules factor into the Board's decision on remand, the Board should articulate what led it to believe that Bless had violated them." *Id.*

¶ 24 We emphasize that the district court did not vacate Bless's discharge. We reiterate that the federal judge vacated the material finding that Bless lied about submitting secondary employment forms and remanded to the board to "decide whether the vacatur of the false-statement finding alters its conclusion that discharge is warranted." *Id.* The federal judge also suggested that the board "clarify" and "articulate" some of its other reasoning, "if" and "[t]o the extent" those reasons had factored into Bless's termination. *Id.*

¶ 25 Bless appealed the grant of summary judgment against his federal discrimination and retaliation claims. He was unsuccessful. The United States Court of Appeals for the Seventh

Circuit affirmed. See *Bless v. Cook County Sheriff's Office*, 9 F.4th 565 (7th Cir. 2021). Bless was also unsuccessful with his administrative review claim. On remand from the district court, the board summarized that its assignment was to consider whether excluding the false-statement-to-OPR finding would change the board's decision to terminate Bless's employment. The board reviewed the evidence and underscored that Bless told an even bigger falsehood than lying to investigators about secondary employment forms: "The evidentiary record clearly establishes that Robert Bless falsely claimed an inability to drive to medical personnel because of self-described and continuing pain and stiffness, which supported his medical restrictions and prevented him from coming to work." The board pointed out that "requesting secondary employment approval[ ] would have contradicted his claim of being *** unable to drive and [would] void [the basis for] his disability leave." Therefore, in the board's opinion, "lying to OPR, given the weight of the complaint[,] is a minor element to the actual conduct of the respondent." Thus, the exclusion of the false statement finding did not affect the board's decision about Bless's termination:

> "It is therefore the unanimous decision of the Cook County Sheriff's Merit Board that Robert Bless did violate the Rules and Regulations of the Sheriff's Department and that termination is warranted and was the proper conclusion.
>
> Wherefore, based on the foregoing, it is hereby ordered that Respondent Sheriff Police Robert Bless be terminated, effective October 6, 2011."

¶ 26    Bless's next step was to file a three-count claim in the circuit court of Cook County. He mischaracterized the federal judge's ruling, stating that the judge had vacated the termination, instead of vacating one of the findings that the board said justified the termination. Based on this mischaracterization, Bless sought the state court's declaration that he was entitled to reinstatement

and back pay (Count I); and a money judgment that included attorney fees, pursuant to the Wage Payment and Collection Act (820 ILCS 115/14(a) (West 2010)) (Count II). Bless also sought administrative review of the board's decision (Count III).

¶ 27    The Sheriff's Office moved to dismiss Bless's declaratory and wage claims, as the Administrative Review Law (735 ILC 5/3-102 (West 2020)) is the sole means of obtaining judicial review of an administrative decision. The circuit court granted the motion to dismiss. Later, after considering the record, the circuit court affirmed the board's decision, as it was consistent with the manifest weight of the evidence and there was cause for discharging Bless that was not arbitrary, unreasonable, or unrelated to the requirements of the service.

¶ 28    Bless's first appellate argument is that it was error to dismiss his common law and statutory wage claims as factually deficient when his allegations were sufficient for both types of claims. He contends that the federal court returned the parties to the status quo ante existing before his termination in May 2013 and "effectively re-employed" him, which entitles him to a civil servant's salary up until the board again discharged him in October 2021. He argues that his "right to wages for the period when his discharge was vacated is clearly established" and cites cases indicating that a wrongfully suspended or discharged civil service employee is owed the salary that the person would have earned but for the wrongful suspension or termination. See *Goral v. Dart*, 2020 IL 125085, ¶ 65 (where merit board was not legally constituted, county sheriff officers' entitlement to back pay could be addressed by circuit court); *Thaxton v. Walton*, 106 Ill. 2d 513, 515 (1985) ("where an employee is reinstated following a determination that his suspension or discharge was illegal, he is entitled to recover his salary for the period that he was prevented from performing his duties"); *Fruhling v. County of Champaign*, 95 Ill. App. 3d 409, 416 (1981) ("if the suspension is

unlawful, the suspension is a mere forced vacation for which the employee must be paid as if he had never been suspended").

¶ 29   The Sheriff's Office's motion to dismiss Bless's two wage counts was brought pursuant to section 2-619(a)(1) of the Code of Civil Procedure. 735 ILCS 5/2–619(a)(1) (West 2020). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other matters that act to defeat the claim. *Id.* § 2-619; *Goral*, 2020 IL 125085, ¶ 27. In particular, section 2-619(a)(1) provides for the involuntary dismissal of a cause of action, based on the circuit court's lack of subject matter jurisdiction. 735 ILCS 5/2-619(a)(1) (West 2020). We review *de novo* a dismissal based on section 2-619(a)(1). *Goral*, 2020 IL 125085, ¶ 27.

¶ 30   Bless's wage claims are baseless. He is unable to cite any language in the district court opinion that even arguably indicates that his discharge was vacated or in any way reinstates his employment. Bless *did* ask the district court to vacate the board's decision and order the Sheriff's Office to reinstate him. See *Bless*, 2020 WL 4437666, at *1. However, the district court was largely favorable of the board's decision. The district court ruled in Bless's favor only "in part" (*id.*), explaining that certain "aspect[s]" of the board's decision were vacated, specifically the board's erroneous "finding that Bless lied to investigators" about submitting secondary employment forms every year (*id.* at *7) and the board's two inadequately explained remarks that "Bless practiced other forms of deliberate concealment" and "disobeyed the Office's general orders" (*id.*). But at no point did the district court vacate the ultimate decision to discharge Bless or order that he be reemployed. Instead, it reasoned that " '[t]he Merit Board, not the reviewing court, is in the best position to determine the effect of an employee's conduct' " (*id.* (quoting *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 75)), and remanded for the board to decide in the first instance whether there

was cause to terminate Bless, despite the vacatur of " 'an important pillar' " of its termination decision. *Id.* (quoting *McRay*, 2018 WL 2432164, at \*10 ("But rather than deciding that in the first instance, \*\*\* the Court will exercise its discretion under the Illinois Administrative Review Act and remand to the Board \*\*\*."")); *Walker v. Dart*, 2015 IL App (1st) 140087, ¶ 39 (same). Furthermore, Bless conspicuously fails to cite any authority that would require that the district court's vacatur of certain findings be treated as the vacatur of the board's entire discharge decision.

¶ 31      Even if Bless could demonstrate that he "alleged sufficient facts to state claims for wages," we would find that those claims were preempted by the Administrative Review Law. 735 ILCS 5/3-102 (West 2020). This is because the General Assembly expressly adopted the Administrative Review Law as the mode of review of decisions of the Cook County Sheriff's Merit Board, stating: "The provisions of the Administrative Review Law, and all amendments and modifications thereof, and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of any order of the Board rendered pursuant to the provisions of this Section." 55 ILCS 5/3-7012 (West 1992) (statute regarding the board's removal, demotion, or suspension of deputy sheriffs and other employees). Where it is expressly adopted, the Administrative Review Law is the exclusive means for review of any decision of the given administrative agency. Ill. Rev. Stat. 1983, ch. 110, ¶ 3-102 ("In all such [administrative review] cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not hereafter be employed."); *Weissinger v. Edgar*, 180 Ill. App. 3d 806, 810 (1989) ("Once the legislature expressly adopts the Act as the mode of review for a given agency, Illinois courts have consistently held that the remedy under the Act is exclusive and the alternate methods of direct review or collateral attack are not permitted."); *People ex rel. Madigan v. Burge*, 2014 IL

115635, ¶ 35 ("When the Administrative Review Law is applicable to an administrative agency, it provides the sole method of reviewing an agency decision."). Accordingly, "[t]he court's power to resolve factual and legal issues arising from an agency's decision must be exercised within its review of the agency's decision and not in a separate proceeding," *Goral*, 2020 IL 125085, ¶ 40.

¶ 32    The legal framework that the General Assembly created around the board precludes Bless's ancillary wage claims. His monetary claims are an attempt to circumvent the board's choice of the appropriate discipline for his conduct after his motor vehicle accident. His wage claims would supersede the board's authority and its decision to terminate his employment effective October 6, 2011, and thus deny him any wages after that date. He would replace that decision with a different decision under which he would receive wages from May 2013 (when the board discharged him) through October 2021 (when the board issued its remand decision). During the remand proceedings, he could have asked the board to change his termination date so that he was paid for the years that he spent in federal court first litigating his retaliation and discrimination claims and then disputing his termination. Because of the Administrative Review Law, Bless cannot circumvent the board by seeking wages in the circuit court that the board did not see fit to award him.

¶ 33    Furthermore, if Bless was ultimately successful in his administrative review action and persuaded this court that he was wrongfully terminated and should be reinstated retroactively, he would receive his back wages. Therefore, his common law and statutory wage claims are duplicative of his administrative review claim and could be dismissed for this additional reason. *Dubin v. Personnel Board of Chicago*, 128 Ill. 2d 490, 499 (1989) ("where a final agency decision has been rendered and the circuit court may grant the relief which a party seeks within the context

of reviewing that decision, a circuit court has no authority to entertain independent actions regarding the actions of an administrative agency").

¶ 34 Bless cites *Goral*, 2020 IL 125085, and *Thaxton*, 106 Ill. 2d 513, for the proposition that his wage claims may proceed, but both of those cases are materially different. In *Goral*, sheriff's officers disputed whether the board was legally constituted and had jurisdiction to conduct disciplinary proceedings. *Goral*, 2020 IL 125085, ¶ 1. Under these limited circumstances, the sheriff's officers were not required to exhaust their administrative remedies. And in *Thaxton*, a municipal employee succeeded on administrative review, but the city failed to reinstate him, so he was allowed to proceed with a *mandamus* action seeking his reinstatement as well as back pay and attorney fees. *Thaxton*, 106 Ill. 2d at 514. We might cite *Goral* and *Thaxton* for the proposition that a dispute regarding the board's authority is the exceptional case that is not properly before the board in the first instance. But Bless never challenged the board's authority. He only disagreed with the board's opinion of his conduct. This means that his claim is an ordinary administrative review claim that is subject to the Administrative Review Law. It is not one of the unusual disputes that the courts were addressing in *Goral* and *Thaxton*.

¶ 35 For these reasons, we find that the circuit court did not err by dismissing the back wage claims that Bless set out as counts I and II of his complaint.

¶ 36 In count III, Bless sought administrative review and he now argues that the board's decision should be set aside. In an administrative review, we review the agency's decision, not the circuit court's decision. *Roman v. Cook County Sheriff's Merit Board*, 2014 IL App (1st) 123308, ¶ 66.

¶ 37 Our review of an administrative agency's decision to discharge is a two-step process. *Walsh v. Board of Fire & Police Commissioners of Orland Park*, 96 Ill. 2d 101, 105 (1983). First,

we determine whether the board's findings of fact are contrary to the manifest weight of the evidence. *Id.* An administrative agency's conclusions as to questions of fact are considered *prima facie* true and correct. *Rios v. Cook County Sheriff's Merit Board*, 2020 IL App (1st) 191399, ¶ 29. Second, we determine whether the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist. *Walsh*, 96 Ill. 2d at 105. "Cause" consists of " 'some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his no[ ] longer occupying the place.' " *Id.* (quoting *Fantozzi v. Board of Fire & Police Commissioners of Villa Park*, 27 Ill. 2d 357, 360 (1963)). The board, not a reviewing court, is in the best position to determine the effect of an employee's conduct on the agency. *Lopez*, 2018 IL App (1st) 170733, ¶ 75. When an administrative agency finds there is cause for discharge, the decision is afforded "considerable deference" and will be overturned only if the finding is arbitrary, unreasonable, and unrelated to the requirements of the service. *Walsh*, 96 Ill. 2d at 105-06.

¶ 38    Bless argues that the board's decision is so vague that judicial review is impossible. He contends that the "terse two-page decision" lacks any factual support for concluding that he "violated medical restrictions by driving" or "falsely claimed an inability to drive." We disagree. While an administrative decision must be sufficiently detailed to allow for meaningful appellate review (*Roman*, 2014 IL App (1st) 123308, ¶ 81), this board's opinion easily clears this standard, as it explains why Bless's discharge was an appropriate consequence. The reasons are particularly apparent when the board's two decisions are read together as one cohesive whole, rather than considered in isolation, as Bless reads the board's two-page remand decision. Furthermore, Bless

is rehashing an argument that was rejected in federal court. The federal judge concluded that the board had effectively "outlined the evidentiary basis for its findings and the legal conclusions they support" and, "contrary to Bless's suggestion, the Board had no obligation to discuss each exhibit entered and witness tendered."

¶ 39    The board found that Bless "falsely claimed an inability to drive to medical personnel because of self-described and continuing pain and stiffness, which supported his medical restrictions and prevented him from coming to work. Yet, he continued to drive to and from his other employment." There is factual support for the board's finding that Bless "falsely claimed an inability to drive to medical personnel." Bless was a patrol officer and had to be able to drive to return to work in that capacity. After an independent medical evaluation reevaluation by Dr. Salehi on January 30, 2009, the physician documented that Bless said he was not driving due to neck stiffness. There was also testimony before the board that from January 19 through March 18, 2009, Bless told his physical therapist that there was no improvement to his neck. The therapist's testimony was corroborated by his medical reports: " 'neck is still stiff and painful,' " " 'Patient reports no change since last visit,' " and " 'Patient reports no change in his neck.' " Despite what Bless told Dr. Salehi, he was driving, as evidenced by the mileage reimbursement forms that he submitted to McHenry County, his testimony confirming that he sought reimbursement for those trips, and his testimony confirming that he had seen the surveillance video of himself driving five times between February and March 2009. Bless testified that, prior to that, he was not behind the wheel and someone else was driving him to and from his "county commissioner job." The board could have disbelieved this testimony and apparently it did disbelieve Bless. As the trier of fact, the board was to evaluate the evidence, assess the witnesses' credibility, resolve conflicts in the

evidence, and draw reasonable inferences and conclusions from the facts. *Nwaokocha v. Illinois Department of Financial & Professional Regulation*, 2018 IL App (1st) 162614, ¶ 52. The board's finding is conclusive here because it is not a reviewing court's role to reevaluate credibility or resolve conflicting evidence. *Id.* Our task is to determine only whether the findings are against the manifest weight of the evidence. *Id.* It is well-settled that a decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). The mere fact that an opposite conclusion is reasonable or that a reviewing court might have ruled differently will not justify reversal. *Id.* A reviewing court may not substitute its judgment for that of the board. *Id.* If the record contains evidence to support the agency's decision, it should be affirmed. *Id.* Bless does not dispute the existence of evidence that he lied to the medical personnel, but instead cites evidence he believes "contradicts the finding." This is not enough as a matter of law. The question is not whether there is competing evidence, but whether there is sufficient competent evidence in the record to allow a rational trier of fact to have made the findings that were made. *Yeksigian v. City of Chicago*, 231 Ill. App. 3d 307, 310 (1992).

¶ 40    Bless also contends there was no evidence that he violated medical restrictions by driving because there were no such restrictions. The record shows, however, that his treating physician, Dr. Foroohar told him on December 1, 2008 to "avoid driving" and that one of the independent medical examiners, Dr. Salehi, documented in his report on January 30, 2009 that Bless "should also refrain from driving due to his limited cervical range of motion." Bless contends that Dr. Salehi could not impose a driving restriction because he was not Bless's treating physician. Bless fails to elaborate on this contention and offers no supporting authority for the proposition that only

a treating physician may issue restrictions of this sort. To the contrary, Bless's employer could not choose to ignore a doctor's express instructions regarding an employee's medical restrictions. *Tate v. Dart*, 51 F.4th 789, 801 (7th Cir. 2022). Moreover, Dr. Foroohar was Bless's treating physician, and he testified that she told him to "avoid driving." The Sheriff and one of its employees have already litigated the meaning of the word "avoid," and "avoid" is a definitive medical restriction:

> " 'Avoid' means 'avoid.' Merriam-Webster defines 'avoid' as 'to keep away from, to prevent the occurrence or effectiveness of,' and 'to refrain from.' *Avoid*, Webster's Third New International Dictionary 151 (unabr. ed. 1993). The Oxford English Dictionary defines 'avoid,' in the 'usual current sense,' as 'to leave alone," to 'keep clear of or away from,' to 'shun,' to 'have nothing to do with,' and to 'refrain from.' *Avoid*, 1 The Oxford English Dictionary 823 (2d ed. 1989). 'Avoid' does not mean 'only occasionally' or 'limit,' which Merriam-Webster defines as 'to restrict the bounds or limits of' or 'to curtail or reduce in quantity or extent.' *Limit*, Webster's Third New International Dictionary 1312 (unabr. ed. 1993). No, 'avoid' is more prohibitive." *Id.*

¶ 41    Considering that a physician's instruction to "avoid" driving meant literally to keep away from or refrain from driving, the board reasonably read Dr. Foroohar's instruction as a medical driving restriction and found that Bless failed to refrain from what he was not supposed to do.

¶ 42    Bless next argues that the board's finding that his inability to drive "prevented him" from working is another flaw in the ruling because his ability to drive had no impact on his ability to work. This argument contradicts Bless's admission before the board that an inability to drive prevented him from "work[ing] as a police officer" for the Sheriff's Police Department. Furthermore, he admits in his brief that he was not medically cleared to return to full-duty work

until 2010. He contends though, that in 2009, he tried to return to the Sheriff's Office in a light-duty capacity, but the Sheriff claimed to have no such work available. He testified, however, that he did not request light duty from the personnel department of the Sheriff's Office and, instead, twice asked a State's Attorney, over the telephone, for light duty. As such, his contention that the Sheriff denied having any light-duty work available is unfounded.

¶ 43    We conclude that the board's factual findings were not against the manifest weight of the evidence.

¶ 44    We next consider whether cause existed to discharge Bless. Bless argues that the board's decision to terminate his employment should be vacated as arbitrary and capricious, and unrelated to the requirements of the service. He cites *Roman*, 2014 IL App (1st) 123308, ¶ 83, for the proposition that we should reinstate him rather than prolong the circumstances by remanding to the board. He contends he was disciplined with the loss of his job because he was "negligent in not submitting secondary employment forms in January 2009 while he was on IOD." Also, the board refused to consider evidence that even Sheriff's employees who engaged in "deliberate unauthorized secondary employment"—rather than "negligent unauthorized secondary employment"—were treated with leniency and not terminated.

¶ 45    As the board explained in determining that discharge was appropriate for Bless's misconduct, the board's central concern was that Bless had engaged in dishonest conduct when he provided information to his medical providers indicating he was unable to drive when he was not only capable of driving, but seeking and receiving reimbursement for the miles he spent driving for his secondary employment. The board further explained that it considered his failure to seek

approval for his secondary employment as indicative of a dishonest scheme to prevent the Sheriff from learning Bless was able to drive, thus jeopardizing his disability leave:

> "The evidentiary record clearly establishes that Robert Bless falsely claimed an inability to drive to medical personnel because of self-described and continuing pain and stiffness, which supported his medical restrictions and prevented him from coming to work. Yet, he continued to drive to and from his other employment. Therefore, by *** requesting secondary employment approval, [he] would have contradicted his claim of being *** unable to drive and thereby void his disability leave. The complaint of lying to OPR, given the weight of the complaint is a minor element to the actual conduct of the respondent."

¶ 46    Given the board's conclusion that Bless's misconduct called his honesty into question, it is indisputable that the decision to discharge Bless was not arbitrary, unreasonable, or unrelated to the requirements of the service. "Trustworthiness, reliability, good judgment, and integrity are all material qualifications for any job, particularly one as a police officer." *Village of Oak Lawn v. Illinois Human Rights Comm'n*, 133 Ill. App. 3d 221, 224 (1985). Furthermore, dishonesty by a law enforcement officer can render that person's continued employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for discharging the employee. *Sindermann v. Civil Service Comm'n of Gurnee*, 275 Ill. App. 3d 917, 928 (1995) ("Cause for discharge has been found where a police officer lies to his employer."); *Caliendo v. Martin*, 250 Ill. App. 3d 409, 418 (1993) ("discharge is an appropriate sanction when a police officer's misconduct manifests a disrespect for the law and tends to undermine public confidence in the honesty and integrity of the police force"). In *Rios*, for example, a sheriff's police officer failed to report that her brother asked her to

interfere in a pending case, and she subsequently lied to investigators, multiple times, by denying speaking with her brother and receiving his request. *Rios*, 2020 IL App (1st) 191399, ¶ 34. She was fired and reviewing court affirmed, as it was "far from arbitrary or unreasonable for the Board to conclude that such conduct rendered Ms. Rios's continued employment detrimental to the [Cook County Sheriff's Office]. The job of a police officer requires the utmost integrity and honesty [citation], two qualities that Ms. Rios demonstrably lacked in this incident." *Id.*

¶ 47    Bless does not argue that being fired for dishonesty is not an arbitrary or unreasonable consequence. What he does argue is that other employees engaging in "deliberate unauthorized secondary employment" received less severe sanctions than being fired. This argument is unavailing because—as the court explained in *Siwek*—other discipline is relevant only when that other discipline arose from the same incident. *Siwek v. Police Board of Chicago*, 374 Ill. App. 3d 735, 738 (2007); *Launius v. Board of Fire & Police Commissioners of Des Plaines*, 151 Ill. 2d 419, 441-42 (1992) (fact that different employees are disciplined differently is not basis for concluding that agency's disciplinary decision is unreasonable; such conclusions are appropriate when individuals receive different discipline in a "completely related" case). None of the other discipline that Bless wanted the board and this reviewing court to consider arose from this same case, so it was and is properly disregarded.

¶ 48    Bless also complains that the board did not consider his mitigating evidence, such as his many years of service without a disciplinary history, but *Siwek* also dispenses with this argument, explaining that the board "need not give mitigating evidence sufficient weight to overcome a termination decision." *Siwek*, 374 Ill. App. 3d at 738; *Kappel v. Police Board of Chicago*, 220 Ill.

App. 3d 580, 596 (1991) (police board may consider mitigating evidence but is not required to place dispositive weight in that evidence).

¶ 49    Finally, Bless argues that his misconduct did not involve the performance of his duties as a police officer. This argument cannot be taken seriously because, again, dishonesty directly implicates an officer's job duties, which is why it is a sufficient ground for discharge.

¶ 50    We find that the board properly determined that cause existed to discharge Bless from his employment by the Sheriff.

¶ 51    For the above reasons, we affirm the circuit court's judgment in dismissing the wage counts and we affirm the board's decision.

¶ 52    Affirmed.

*Bless v. Cook County Sheriff's Office*, 2024 IL App (1st) 230256

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021-CH-05831; the Hon. Michael T. Mullen, Judge, presiding. |
| **Attorneys for Appellant:** | Jeffrey R. Kulwin, of Kulwin, Masciopinto & Kulwin, L.L.P., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Jonathon D. Byrer, and William Yung, Assistant State's Attorneys, of counsel), for appellees. |